## Klein *v.* Pennsylvania Savings Fund & Loan Association, Appellant.

*Building and loan association—Loans—Competitive bidding—Evasion of the law—Usury.*

Where the members of a building and loan association are informed by the officers of the association that they will be required to pay on all loans six per cent premium per annum in addition to legal interest, and, in accordance with instructions, members make written application for loans on such terms, giving a power of attorney to an officer or employee of the association to submit the bid, and the board of directors pass upon the applications according to their priority without any bidding or competition, the association acts clearly in violation of the law, and a member may set off against the principal of his loan all premiums paid in excess of the legal rate of interest.

MR. CHIEF JUSTICE MITCHELL dissents.

Argued Oct. 26, 1906. Appeal, No. 12, Oct. T., 1906, by defendant, from decree of C. P. No. 2, Allegheny Co., July Term, 1903, No. 815, on bill in equity in case of Robert Klein v. The Pennsylvania Savings Fund & Loan Association. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an account.

FRAZER, P. J., filed an opinion which was in part as follows:

The purpose of the bill in this case was to secure permission for plaintiff to pay into court a balance claimed to be due by defendant from plaintiff on a mortgage against certain property owned by plaintiff, also, to have the mortgage satisfied and allow plaintiff to contest defendant's right to the balance claimed by it. From the bill, answer and proofs we find the following facts:

#### FINDINGS OF FACT.

1. Defendant is a corporation of the state of Pennsylvania, organized in the year 1891, under the building and loan association act, approved April 29, 1874, P. L. 73, its principal office being located in the city of Pittsburg.

2. Plaintiff, as a member of defendant corporation, subscribed for forty shares of its capital stock and borrowed thereon the sum of $4,000. [At the time of making his appli-

cation for the loan he was informed at the office of defendant by a person in the office at the time that a premium of six per cent on his loan would be necessary, and that thereupon he signed a written application for the loan], [1] together with a power of attorney authorizing W. A. Hemphill, an employee of the association, to represent him at a meeting of defendant company to be held July 12, 1894, and bid for him a premium of six per cent per annum for preference or priority of loan. The paper signed by plaintiff is as follows:

" I Robt. Klein, of Pittsburgh, County of Allegheny, State of Penna., being a member of the Pennsylvania Savings Fund & Loan Association, and desiring to borrow therefrom the sum of $4,200, do hereby appoint W. A. Hemphill of Pittsburgh, to attend a meeting of the members of said association and there to bid for me and in my name and place a premium of six per cent per annum for preference or priority of loan, to be paid by me in monthly installments in addition to the interest of six per cent on the sum borrowed.

" Witness, my hand this 10th day of July, A. D. 1894.
                              " (Signed) ROBERT KLEIN."

" I, W. A. Hemphill, being personally present at a meeting of the members of the Pennsylvania Savings Fund & Loan Association held this 12th day of July, 1894, at the principal office of said association, Pittsburgh, Pa., by virtue of the foregoing appointment, have at the said meeting, for and in the name of the said Robert Klein, bid six per. cent. premium for priority of loan.
                              " (Signed) W. A. HEMPHILL.
" Attest :
     " HARVEY HENDERSON."

3. At the meeting at which plaintiff's loan was granted there were altogether fifteen applications for loans, each applicant being represented either by Mr. Hemphill, who represented Klein, or by Mr. Black, the general manager of the defendant association, under powers of attorney similar to that signed by plaintiff.   [The applications and bids were handed in one at a time by the person representing the applicant, and thereafter were taken up by the board and passed upon in the order of priority of date.   There was no bidding or competition what-

ever between the persons representing those members desiring to become borrowers.] [2]

4. [Previous to the month of February, 1894, under the by-laws of defendant association, then in force, borrowers were required to pay a fixed premium of fifty cents per share, which amounted to six per cent per annum.] [3] In February, 1894, however, the by-laws were amended by striking therefrom the requirement for a fixed premium. At the time plaintiff procured his loan each applicant bid a premium of six per cent per annum, there being no bids for either a greater or less amount. Subsequently loans were made for a time at a premium of 4.8 per cent per annum, and afterwards at three per cent per annum. While no action by the board of directors, or the stockholders of the association, was taken requiring borrowers to pay a fixed premium, it, however, appears from the testimony to be a fact that no loans were made without the payment of a six per cent premium during a certain period, and 4.8 per cent premium during a subsequent period, and a three per cent premium during a still later period.

5. Borrowers were seldom present at meetings at which their applications for loans were passed upon, it being [the universal custom to have the application presented by a representative of the borrower, who usually was either an officer or employee of the association, the application and authority to the representative to bid in all cases being similar to that signed by plaintiff.] [4]

6. On July 21, 1902, plaintiff made application in writing to defendant association requesting that the premium of six per cent per annum for priority of loan be reduced to one per cent per annum, and interest to five per cent per annum, which request was granted by the board of directors on that day, and that thereafter plaintiff was charged with interest and premium at this reduced rate.

7. Upon his loan plaintiff has made the following payments to defendant association, viz.:

| | | |
|---|---|---|
| 96 monthly installments of premium at $20 | . | $1,920 |
| 103 monthly installments of interest at $20 | . | 2,060 |
| 105 monthly installments of dues at $20 . | . | 2,100 |
| Total . . . . . . | . | $6,080 |

Plaintiff's claim is that the above payments are ample to fully discharge his indebtedness to defendant on account of his loan.

8. Defendant claims the sum of $1,601.78 to be still due it on account of plaintiff's indebtedness.

\*    \*    \*    \*    \*    \*    \*    \*

### CONCLUSIONS OF LAW.

2. [In this case defendant is a building and loan association and plaintiff a stockholder thereof. Was the law complied with in bidding for preference. At the time plaintiff received his loan there were fifteen applications for loans. It does not appear that a single applicant was present in person at the meeting. Each had signed an application prepared by the association and had appointed an officer of the association his representative to bid for him a definitely fixed premium of six per cent per annum. These applications were virtually an agreement upon the part of the borrower to pay a premium of six per cent in addition to legal interest, and the power of attorney attached merely authorized the applicant's representative to convey that offer to the association. It does not appear to have been the intention of the parties that there should be competition between the borrowers. On the contrary, the conclusion is irresistible that just the opposite was intended. Instead of bidding, i. e., competing at auction for priority, these offers were handed to the directors of the association by the representative of the applicant, and were thereafter acted upon according to priority of date. In construing the statute permitting premiums on loans our appellate courts have in no uncertain language laid down the course to be pursued to make such charges valid.] [5]

\*    \*    \*    \*    \*    \*    \*    \*

3. [In this case we have found as a fact that at the time plaintiff received his loan there was no competitive bidding. That finding, it seems to us, is clearly warranted by the evidence and the surrounding circumstances. Plaintiff testifies, and the testimony of at least one other witness tends to support him, that he was informed by an employee of the association that a six per cent premium would be necessary to secure a loan, and it also appears that at the time plaintiff received his loan, and for some time both before and after, no loans were

made by defendant association to borrowers for either a greater or less premium than six per cent. These circumstances, together with the fact that every applicant for a loan at the meeting of July 12, 1894, received a loan at the uniform premium of six per cent and also that the applications were acted upon by the directors in the order of their date, show conclusively that the money for loan was not offered in open meeting and awarded to the highest bidder for priority, as the law directs. It, therefore, follows that the premium charged plaintiff previous to July 21, 1902, the time at which the premium and interest were reduced, is usurious and illegal.] [6]

[4. Plaintiff having paid defendant association as dues, interest and premiums the sum of $6,080, which amount is more than sufficient to fully pay and cancel his loan of $4,000, together with legal interest thereon, it follows that he is not indebted to defendant in the sum of $1,601.78, or any other amount, and that the money in court, less prothonotary's commissions, should be paid to him.] [7]

A decree was entered in accordance with the opinion.

*Error assigned* was the decree of the court and findings of fact and conclusions of law as above.

*W. B. Rodgers*, for appellant.

*W. H. Lemon*, for appellee.—The premium to be lawful must be one bid for right of precedence at a competitive sale, and where there was no such sale or bid there can be no lawful premium. It is so held in the following cases: Stiles's Appeal, 95 Pa. 122; Land Title & Trust Co. v. Fulmer, 24 Pa. Superior Ct. 256; Bates v. People's Savings & Loan Assn., 42 Ohio, 655; State v. Greenville Bldg. & Saving Assn., 29 Ohio, 92; State v. Oberlin Bldg. & Loan Assn., 35 Ohio, 258.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1907:

The single question raised by this appeal is whether Klein obtained his loan from the defendant association by competitive bidding. The learned trial judge has found that at the time Klein's loan was granted there were fifteen applications for loans, that the application and bids were handed in one at a time by the person representing the applicant and thereafter

were taken up by the board and were passed upon in order of priority of date, that there was no bidding or competition whatever between the persons representing those members desiring to become borrowers.

On these findings of fact, the court's conclusion of law is as follows: " Was the law complied with in bidding for preference? At the time plaintiff received his loan there were fifteen applications for loans. It does not appear that a single applicant was present in person at the meeting. Each had signed an application prepared by the association and had appointed an officer of the association his representative to bid for him a definitely fixed premium of six per cent per annum. These applications were virtually an agreement upon the part of the borrower to pay a premium of six per cent in addition to legal interest, and the power of attorney attached merely authorized the applicant's representative to convey that offer to the association. It does not appear to have been the intention of the parties that there should be competition between the borrowers. On the contrary, the conclusion is irresistible that just the opposite was intended. Instead of bidding, i. e., competing at auction for priority, these offers were handed to the directors of the association by the representative of the applicant, and were thereafter acted upon according to priority of date."

These conclusions of fact and law are amply justified by the testimony and the authorities cited in the opinion of the court. The finding that plaintiff was told that he must bid six per cent premium is sustained by the testimony, and we think the testimony also shows that his information came from some person authorized to speak for the company. Kleeb, a bookkeeper of the association during part of the time the plaintiff was a stockholder, testified that during the four years he was in the service of the association—up to 1903—the borrower was told the amount of premium he had to pay. This is supplemented by the testimony of the plaintiff that he was told in the office of the association that his loan would cost him six per cent interest and six per cent premium, and by the further fact that the fifteen applicants for loans all bid the same amount of premium, six per cent, at the meeting at which the loans were granted.

As tending to show that, at the time the plaintiff secured his loan, the association had adopted a fixed premium and disregarded the statutory requirement that money should be loaned to the highest competitive bidder, it was competent for him to introduce evidence to show that immediately prior to granting his loan the association had a fixed premium, that it was in effect at the time his loan was granted and was continued thereafter, and that it was the universal custom of the association to have the application for a loan presented by a representative of the borrower who usually was either an officer or employee of the association. Such testimony tended to establish not only the fact that the association had a fixed, definite premium for all loans, but that, as the plaintiff alleges, his loan and the loans of the other stockholders whose applications were considered at the same time were granted for a premium previously fixed by the association.

At the meeting at which the plaintiff was granted his loan, there was no bidding at auction, nor crying bids, nor but a single bid for any loan secured. Each applicant for a loan offered a certain premium which he had been informed was necessary to obtain a loan, and without any other bid, greater or lesser, he obtained the loan. Such action on the part of the defendant association clearly shows that it was not conducting a legitimate building and loan association business, but was using its charter as a device or cover for the purpose of evading the usury laws. As said by BURGESS, J., in Meroney v. Atlanta B. & L. Assn. (N. C.), 47 Am. St. Rep. 841, in construing a similar statute where a like attempt was made to evade the usury laws, such an association " is merely a money lending, dividend paying corporation to which, for some purpose, some features of a ' building and loan association ' have been attached." Our act of 1874 under which the defendant was incorporated points out explicitly the manner in which the business of such associations shall be conducted, and protection of needy borrowers requires the courts to compel a strict compliance with its provisions. The language of the act is mandatory as to the manner in which loans shall be made, and provides that the money of the association " shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference of priority of

loan shall be entitled, to receive a loan." Failing to observe this positive command of the statute the defendant association cannot invoke the aid of its charter to protect it from the penalty of usury. The privileges and immunities of such corporations are secured by adhering strictly to the law of their creation, and when, as here, they violate that law, they cannot shield themselves from the consequences which the laws of the commonwealth justly inflict upon the usurer.

The decree is affirmed.

MITCHELL, C. J., dissents.