No. 21709.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTS-
BURGH, PA. *v.* DENVER BRICK AND PIPE COMPANY; AMERI-
CAN BUILDERS SUPPLY, INC.; AMERICAN BUILDERS CONTRACT
DIVISION, INC.; TRADE WINDS REALTY CORPORATION; POPE
HEATING & AIR CONDITIONING CO.; STURGEON ELECTRIC
CO., INC.; MINNEAPOLIS-HONEYWELL REGULATOR COMPANY;
COLUMBIA SAVINGS & LOAN ASSOCIATION AND ATLAS GLASS
CO. D/B/A A-1 GLASS, INC.

(427 P.2d 861)

Decided May 15, 1967. Rehearing denied June 12, 1967.

520

WELLER, FRIEDRICH and HICKISCH, for plaintiff in error.

STERLING and STERLING, for defendant in error Trade Winds Realty Corporation.

WARREN KENT ROBINSON, for defendants in error Denver Brick & Pipe Co., American Builders Supply, Inc., and American Builders Contract Division, Inc.

LESLIE A. GIFFORD, for defendant in error Pope Heating & Air Conditioning Co.

WILLIAMS, ERICKSON and BROWN, for defendant in error Sturgeon Electric Company, Inc.

HYMAN D. LANDY, for defendant in error Minneapolis-Honeywell Regulator Company.

HAROLD TAFT KING, C. J. HAFERTEPEN, for defendant in error Columbia Savings and Loan Association.

LENNART T. ERICKSON, for defendant in error Atlas Glass Company, d/b/a A-1 Glass, Inc.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THE writ of error in this case is directed to a judgment entered against the Wehrer Construction Company (contractor, or Wehrer) and National Union Fire Insurance Company (National Union, or surety) on a contractor's bond in favor of American Builders Supply, Inc., and six other subcontractors (hereinafter referred to by name or collectively as lien claimants) for the specific amounts of their claims. Recognizing the claims as duly established mechanics' liens against the property involved, the court also entered judgment ordering their foreclosure in the event the money judgments were not satisfied on or before a certain date.

Trade Winds, in its *summary of argument,* seeks to modify the judgment in three areas, none of which is coincidental with those raised by National Union. They will be considered following the disposition of the errors alleged by National Union. In passing, because the lien claimants questioned it in their briefs, we pause to point out that the procedure followed by Trade Winds to challenge the rulings of the trial court is in harmony with the Colorado Rules of Civil Procedure. See Rule 111(f); also, Rule 59(f).

The action was initiated by three subcontractors as plaintiffs. Wehrer, Trade Winds Realty Corporation (Trade Winds), Columbia Savings and Loan Association (mortgagee, or Columbia), and several other subcontractors were made defendants. Atlas Glass Co., defendant in error, intervened below as a defendant, and the procedure and the interpretation of the statute relating to intervention are challenged.

The complaint contained two claims: the first, to fore-

close plaintiffs' mechanics' liens against the property of Trade Winds; and the second, for a money judgment against Wehrer and National Union on their bond.

Wehrer failed to appear or answer and its default was duly entered.

Trade Winds was the owner of a tract of land located in the City of Edgewater, Jefferson County, Colorado. On or about May 7, 1963, it entered into a contract with Wehrer for the construction of a building to be used as a bowling alley, restaurant, lounge, and related facilities. The contract bore date of May 7, 1963, and the bond in question bore date of April 29, 1963. There were other contracts between Wehrer and Trade Winds, and other bonds relating to performance of the contracts all furnished by National Union, which preceded the contract and bond in issue, but we do not regard them of sufficient significance to justify setting out the factual details and sequence. Ultimately the parties negotiated the contract in issue, in which the stipulated amount was $241,157. It also was dated May 7, 1963. The bond in issue was executed in the identical amount of the final contract, $241,157, but bore date of April 29, 1963. This bond is designated "Contract Bond." Wehrer is principal; National Union is surety; Trade Winds, the owner-obligee, and Columbia is referred to as "lender." Columbia specifically requested that it be named an obligee in the instrument.

That portion of the bond which is material to the issues here reads:

"WHEREAS, the Principal has entered into a Construction Contract *of even date herewith* with the Owner-Obligee for the construction of Tradewinds Bowl, 20th and Sheridan, Edgewater, Colo., in accordance with the plans and specifications therefor . . . [description of property] a copy of *which Construction Contract is by reference made a part hereof*; and

"WHEREAS, the Lender has agreed to lend to the

Owner-Obligee a sum of money, on the security of a first mortgage or deed of trust on the property above described, together with the improvements constructed or to be constructed thereon, the net proceeds of such loan to be used to pay part of the construction cost of said improvements and the *Lender desires protection,* as its interest may appear, *against default by the Principal under said Construction Contract.*

"NOW, THEREFORE, the condition of this obligation is such that if the Principal shall well and truly perform all the covenants, terms, conditions and agreements of said Contract to be kept and performed by the principal and shall pay or cause to be paid all bills, accounts and claims for labor performed and for materials used or furnished in the carrying out and doing of the work provided for by said Contract and shall fully indemnify and save harmless the Obligees from all cost, damage and expense by reason of the Principal's default under said Contract, and shall fully reimburse and repay to the Obligees all outlays and expenditures by them or either of them in making good any such default, then this obligation shall be null and void, otherwise shall remain in full force and effect." (Emphasis added.)

The foregoing obligation is subject to a provision which will be reserved for discussion under IV, *infra.*

■ The court found that actual construction work commenced under the contract on June 1, 1963, and that it continued without significant interruption until February 11, 1964, the date of completion. We hold that there was competent evidence to support these findings.

Additional material facts will be supplied where needed to clarify the text of this opinion.

I.

The plaintiff in error, National Union, raises four points in its summary of argument. Its first argument is that the plaintiffs in the trial court joined in one action separate claims against different defendants. The

issue is presented in this fashion, as set forth by National Union in its brief:

"The plaintiffs' first cause of action is to foreclose their mechanics' liens under the statute. The three lien claimants are the plaintiffs and the owner, general contractor, the other lien claimants, Columbia and the Public Trustee as the other persons claiming an interest in the property being foreclosed, are the defendants. This is as required by the statute. The second cause of action, on the other hand, is against the surety alone. No claim is made by the plaintiff against any of the other defendants. This creates a misjoinder of causes of action and the trial court was without jurisdiction to proceed." National Union first raised this question in the trial court by a motion to dismiss, in the following form:

". . . moves this Court to dismiss Plaintiffs' claim and the Defendants' counterclaims and cross-claims against this defendant, and as grounds show unto the Court that *this Court lacks jurisdiction to proceed in this case.*" (Emphasis added.)

The pre-trial order records the plaintiff in error's objection on the same point, in this fashion:

"National Union denies the jurisdiction of the Court to determine in a lien foreclosure action the questions as hereinafter set forth as between the plaintiff and the other defendants and National Union."

In its motion for a new trial, National Union raised the issue in this manner:

"1. The Court had no jurisdiction of this Defendant National Union Fire Insurance Company of Pittsburgh, Pa. as alleged surety on a construction bond in a mechanic's lien foreclosure action."

 It is apparent from the recitation of the record that the assertion of "misjoinder of claims" is actually raised for the first time in this court. However, since National Union raises the question of the jurisdiction of the court either (and we are not certain which) over its person or the subject matter of the action (the bond),

we will point out that the court did not err in its ruling. C.R.S. 1963, 86-3-15, provides:

"*Parties to action.* — Principal contractors *and all other persons personally liable for the debt for which the lien is claimed* shall be made parties to actions to enforce liens under this article. . . ." (Emphasis added.) See also, *Howard v. Fisher*, 86 Colo. 493, 283 P.1042.

II.

National Union's next assignment of error is that "The owner did not bond the contract under which the building was built."

The factual background on the point appears in the trial court's finding number 6, in these words:

"At or prior to the time of the making of said construction loan, defendants Wehrer Construction Co., as principal, and National Union Fire Insurance Company, as surety, issued and delivered a bond to Columbia Savings & Loan Association and Trade Winds, the same being Sturgeon Exhibit 12, in the amount of $241,157, conditioned upon performance of the building and construction contract and payment of all bills, accounts and claims for labor performed and materials used or furnished in the work. A previous bond, Atlas Exhibit 6, was issued by the said surety but was returned to the surety and cancelled when the bond, Sturgeon Exhibit 12, was issued and premium received on account thereof was applied to premium for the bond, Sturgeon Exhibit 12. The full premium for the bond, Sturgeon Exhibit 12, was paid to defendant National Union Fire Insurance Company. The fact that the said bond specified an incorrect date for the building and construction contract is of no consequence. This date was inserted in the bond by the agent of the surety and he does not remember the source from which this date was obtained. There was no evidence that any building and construction contract for this project was entered into on April 29, 1963."

The bond is dated April 29, 1963. The contract is dated May 7, 1963. There is no evidence that any con-

tract was entered into on April 29, 1963, or at any other time, which was acted upon by the parties; however, it is obvious from the facts here that it was the intention of the parties to the transaction that the bond relate to the contract of May 7, 1963, as found by the trial court. An action to reform the bond, which was urged by National Union as the proper and only procedure for rectifying the mistake, is not required where the mistake is so obvious and the variance so inconsequential. *Hendrie v. Commissioners,* 153 Colo. 432, 387 P.2d 266; *Re Moffitt's Estate,* 116 Vt. 286, 75 A.2d 698; 11 C.J.S. *Bonds* § 15.

### III.

National Union, as a third assignment of error, maintains that:

"The lien claimants were not obligees on the bond of indemnity to the owner and the owner had no intention that such bond benefit such claimants, hence these claimants had no right of action on the bond."

Continuing its argument, National Union asserts that "the bond is what is commonly known as an indemnity bond." In short, it asserts that the liability of the surety is limited to the named obligees — Trade Winds and Columbia — and since the lien claimants were not specifically named in the bond, they have no right of action on it.

Reference to the pertinent portions of the bond above set forth show that the contract was "by reference made a part" of the bond. The two documents, therefore, must be construed together in reaching a conclusion as to the reach of the bond. National Union maintains that the bond is one of indemnity, in spite of the fact that it labeled it "Contract Bond."

The condition of the bond is not one of limited indemnity, but one of broad coverage. The principal (Wehrer) is obligated to "well and truly perform all the covenants, terms, conditions and agreements of said Contract to be kept and performed by the principal."

(Bond obligation.) The contract, *inter alia,* provides that the contractor (Wehrer)

". . . shall deliver to the Owner [Trade Winds] a complete release of all liens arising out of this Contract. . . . If any lien remains unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging such a lien, including all costs. . . ."

Article 37 of The General Conditions of the Contract (American Institute of Architects, Standard Form, 1961 Edition), one of the contract documents, is devoted to the "Relations of Contractor and Subcontractor." Among other provisions, the subcontractor agrees "To be bound to the Contractor by the terms of the Agreement, General Conditions of the Contract . . . and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner." On the other hand, "The Contractor agrees — d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions of the Contract . . . and by all the provisions thereof affording remedies and redress to the Contractor from the Owner."

Additional obligations of the contractor to the subcontractor, in brief, read as follows:

"e) To pay the Subcontractor . . . the amount allowed to the Contractor on account of the Subcontractor's work to the extent of the Subcontractor's interest therein.

"f) To pay the Subcontractor . . . so that at all times his total payments shall be as large in proportion to the value of the work done by him as the total amount certified to the Contractor is to the value of the work done by him.

"g) To pay the Subcontractor to such extent as may be provided by the Contract Documents or the subcontract, if either of these provides for earlier or larger payments than the above.

"h) To pay the Subcontractor on demand for his

work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue, even though the Architect fails to issue it for any cause not the fault of the Subcontractor."

■■ It is at once apparent from the foregoing excerpts from "The General Conditions of the Contract" that the contract included within its terms the subcontractors, although unnamed. It is beyond dispute that the provisions were not only for the benefit of the principal contractor and the owner, but also were expressly for the benefit of the subcontractors. Construing the terms of the contract with those of the bond, heretofore set forth, it is abundantly clear that the intention of the parties to the several documents was to obligate the bond to the payment of all unpaid subcontractors' bills incurred in their respective performances under their subcontracts. We agree with the trial court's "Conclusions of Law" number 3, wherein it decided that:

"Defendant National Union Fire Insurance Company is directly liable to each of said lien claimants for the amount of its claim, with interest, under and by virtue of the aforesaid surety bond. . . . "

The noted authority, Professor Corbin, in his comprehensive law review article — Corbin, *Third Parties as Beneficiaries of Contractors' Surety Bonds*, 38 Yale Law Journal 1, 14 — states the following:

"The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. Often the construction contract contains an express promise by the contractor; and the bond is either conditioned expressly on such payment or on full performance by the contractor of all his promises. The third parties are often definitely indicated in that part of the bond specifying the conditions. Words of 'condition' are not words of 'promise' in form; but in this class of cases it is sound policy to interpret the

words liberally in favor of the third parties. In a majority of states, it is already done; and without question the surety's rate of compensation for carrying the risk is sufficiently adjusted to the law. . . . "

See also *Standard Accident Ins. Co. v. Simpson*, 64 F.2d 583 (4th Cir.), *cert. denied*, 290 U. S. 688; *Hollerman Mfg. Co. v. Standard Accident Ins. Co.*, 61 N. D. 637, 239 N. W. 741; *Bristol Steele & Iron Works v. Plank*, 163 Va. 819, 178 S. E. 58, 118 A. L. R. 50 (and cases therein cited); *Fidelity & Deposit Co. v. Rainer*, 220 Ala. 262, 125 So. 55, 77 A. L. R. 13 and annotation beginning at 21.

IV.

The plaintiff in error, for its final attack upon the judgment of the trial court, asserts that:

"The obligees breached the conditions of the construction contract and of the bond with regard to payments to the contractor, and these breaches release the surety of liability."

The evidence does reflect that the obligees (Trade Winds and Columbia) did not strictly adhere to certain provisions contained in the contract documents, such as the one requiring the written approval of the surety "with respect to any changes or alterations in said contract if the cost thereof, when added to prior alterations or changes, causes the aggregate cost of all such changes and alterations to exceed 10% of the cost originally specified in the contract," and the requirement that Trade Winds and Columbia withhold 10% of the payments due the contractor (Wehrer) until the final certification by the architect.

National Union, in its brief, acknowledges that "the trial court recognized that there had been a breach of the conditions of the bond but provided only that Trade Winds be liable to the surety for any amount of the extras in excess of 10 per cent of the contract." However, it is the contention of National Union that, under such circumstances, it should have been relieved of any liability whatsoever.

The trial court's recognition of the breaches, above alluded to, was reflected in its findings, in this language:

"13. The Court further finds that the amount of the contract and extras ordered by the contractor and owner was $268,174.70, which exceeded the figure for which defendant National Union Fire Insurance Company agreed to be liable by $2,902.00.

"14. The Court further finds that the defendant Trade Winds Realty Corporation was obligated by the contract to retain from its payment to defendant Wehrer Construction Company the sum of $26,527.27, said sum being 10% of the principal contract amount plus the changes, and that defendant National Union Fire Insurance Company has the right to expect this sum to be available to it in the event of the default of the principal on the bond, Wehrer Construction Co.

"15. The Court further finds that the total amount for which defendant National Union Fire Insurance Company is liable in this action is less than the penalty amount of the bond, but, of that liability composed of the liens of the lien claimants, an amount of $2,902.00 is for extras which the contractor and owner agreed upon without the written consent of the defendant National Union Fire Insurance Company."

Likewise, the judgment protected the surety on a pro rata basis by charging Trade Winds for the full amount which it should have withheld from its payments to Wehrer, together with the amount by which the extras exceeded ten per cent of the original contract price. This fully recognized the terms of the bond, except for the forfeiture provision. Under the circumstances we find no prejudice to the surety by virtue of the trial court's ruling. The general rule is that in order to relieve a compensated surety from liability where there has been an alteration or deviation from the terms of a contract, the surety must be prejudiced thereby. *Federal Surety Company v. White,* 88 Colo. 238, 295 P.281; *National Surety Company v. Queen City Co.,* 63

Colo. 105, 164 P.722; *Empire State Surety Company v. Lindenmeier,* 54 Colo. 497, 131 P.437; 21 R. C. L. 1160.

■ We hold that the trial court did not err in finding as it did or in the judgment it entered in respect thereto.

## V.

We now turn to alleged errors assigned by Trade Winds in its brief. The first asserts error in the refusal of the trial court to award "attorney's fees" incurred in resisting mechanics' lien claims. The evidence disclosed that Trade Winds paid its attorneys $2200 to defend it against the mechanics' lien foreclosure, plus $30 in docket fees.

The trial court, in its *Conclusions of Law,* disposed of the "attorney's fees" question with great clarity and dispatch, with these words:

"6. No attorneys fees are to be allowed to any party."

The obligation of the bond, of course, does provide that the surety "shall fully indemnify and save harmless the obligees [Trade Winds being one] from all costs, damage and expense by reason of the principal's [Wehrer] default under said contract." This language is broad enough to cover "attorney's fees" expended by Trade Winds to protect its property against mechanics' liens which resulted from the breach of the contract by the principal (Wehrer) and were indemnifiable under the bond unless some act or omission of Trade Winds relieves the surety of its obligation.

Trade Winds refers us to certain cases which, in its opinion, suggest that the trial court erred in its ruling on this point. National Union, citing no authority, argues that "cases cited by Trade Winds . . . are not applicable here due to the fact that none of them involve a situation where there was in fact a finding that the obligee had itself been guilty of a breach and was liable therefor."

We have examined *Crowley v. U.S.F.&G.,* 29 Wash. 268, 69 P.784, and *National Tea Co. v. McDonough,* 178

Minn. 388, 227 N. W. 205, cited by Trade Winds. In both cases the surety, in defense of a claim by an owner-obligee for attorney's fees, alleged violations of terms of the contract by the owner, but in each case the court held that there had been no breach. Here, the court found breaches by the owner-obligee and, in effect, provided for a *pro tanto* setoff in favor of National Union against Trade Winds for the breaches.

It is apparent from the pleadings, the assertions of National Union in its motion for new trial and its assignments of error as reflected in the summary of argument in its reply brief in this court, that National Union, from the outset, took the position that *it had no responsibility whatsoever* under its bond because the bond was not a third party beneficiary contract; but, even if it were, the violations by Trade Winds, heretofore discussed, operated to release National Union from *all* liability. It is thus apparent that the failure on the part of National Union to correctly assess its legal liability was to a large extent responsible for the litigation and the consequent expenditure of attorney's fees by Trade Winds. We therefore hold that the court erred in failing to award reasonable attorney's fees as a proper claim under the terms of the bond.

The president testified that Trade Winds hired "an attorney by reason of the action" being reviewed here. That the attorney was paid $2200 and that $30 was paid "as court costs." The admissibility of this evidence was raised on cross-examination by counsel for National Union by a motion to strike. The court denied the motion, but stated that "We will expect the evidence if we go over to" the next day. The trial was concluded in one day.

Although the court did not award attorney's fees, the proof was sufficient to establish that the fees were rendered and constituted an "expense by reason of the Principal's default under said Contract" (the bond). See obligation of bond, pages 5 and 6, *supra.* The

surety makes no issue of the reasonableness of the fees paid by the obligee to its attorney, so the issue here relates to the question of liability alone. There is no reason why attorney's fees should not be considered as a part of the "cost, damage and expense," for which the surety obligated itself. This conclusion applies, also, to the court costs. See *National Tea Co. v. McDonough,* and *Crowley v. U.S.F.&G., supra.*

## VI.

Trade Winds' next assignment of error attacks the intervention of Atlas Glass Company (Atlas) as a defendant in the trial court. In order to bring this into proper perspective, it should be noted that at the outset we held that the trial court properly found that the completion date of the structure, which is the subject of the lien foreclosure aspect of this lawsuit, was February 11, 1964. Atlas had three months from February 11, 1964, to file its lien of record and six months therefrom to commence "an action" to enforce its lien. Atlas filed its lien of record on April 20, 1964, which was well within the statutory time limit. The plaintiffs below filed their complaint in the district court on April 24, 1964, naming all other lien claimants, except Atlas, defendants. The Lien Foreclosure Certificate (an exhibit) was certified to and including April 14, 1964, six days before the filing of the lien statement by Atlas. It was probably used by counsel for the plaintiffs in drafting their complaint, hence the obvious omission of Atlas.

Atlas filed a motion to intervene (with complaint in intervention attached thereto) on May 13, 1964. Trade Winds asserts the filing did not comply with C. R. S. 1963, 86-3-11 (3). The language of the statute upon which Trade Winds relies states that:

". . . Any party claiming a lien, not made a party to such action, at any time *within the period provided in Section 86-3-9,* may be allowed to intervene by motion, upon cause shown and may be made a party defendant. . . . " (Emphasis added.)

Here is the gist of Trade Winds' argument, as it appears in its brief:

" . . . The motion itself was filed later than 'anytime within the period provided in Section 86-3-9.' The longest period provided in Colorado Revised Statutes 1963, 86-3-9, for filing is three months after completion of the building. The trial court determined that intervention two days more than three months after the date found to be completion was proper. . . . "

Trade Winds relies on *McClung v. Griffith*, 127 Colo. 315, 255 P.2d 973. From a careful examination of the *McClung* opinion it is clear that the court was not required to, and indeed did not, construe that part of the 86-3-9 quoted above. Whatever was there said in reference to 86-3-9 (as it was then designated) was *obiter dicta*. After alluding to "anytime within the period provided in section 23" (86-3-9), the court said:

"Moreover, upon the face of the complaint which was filed in support of the motion to intervene, it affirmatively appears that McClung had no rights as a lien claimant."

We have likewise studied *Hawkins v. Grisham,* 69 Colo. 156, 170 P. 187, which was also cited by Trade Winds in support of its argument. We are unable to glean anything from the opinion that is helpful to us in determining the intent of the legislature in reference to the language now before us.

The effect of Trade Winds' argument is that, although Atlas could have commenced an independent action (86-3-11) to foreclose its lien within six months of the completion of the building (86-3-10), it had but three months from completion date within which to intervene, because of the limitation imposed by the terms of 86-3-11(3). This period of time is the same as Atlas, as a principal contractor, had to file its lien statement.

The construction contended for by Trade Winds seems somewhat tortuous and inconsistent with the scheme

and philosophy of the mechanic's lien law and particularly with that evidenced by the two prior subsections of 86-3-11. Subsection (1) provides that:

"Any number of persons claiming liens against the same property and not contesting the claims of each other, may join as plaintiffs in the same action; *and when separate actions are commenced, the court or the judge thereof may consolidate them* upon motion of any party or parties in interest, or upon its own motion." (Emphasis added.)

Subsection (2) provides that:

"Upon such procedure for consolidation, one case shall be selected with which the other cases shall be incorporated; and all the parties to such other cases shall be made parties plaintiff or defendant as the court or judge may designate in said case so selected. *All persons having claims for liens, the statements of which shall have been filed as aforesaid, shall be made parties to the action.*" (Emphasis added.)

It is unmistakably clear that it was contemplated by the lawmakers that "all persons having claims for liens" were to be made parties, if "the statements have been filed" within the statutory time. Having clearly expressed this thought we must, if possible, construe the language of the next subsection in such manner that it does not contradict what has already been said. Also, if possible, the construction should produce a reasonable result.

Turning now to that part of 86-3-11(3) which Trade Winds, in effect, argues is a special statute of limitations, we conclude that the reference therein to "the period provided in section 86-3-9" modifies the first clause of the sentence, "Any party claiming a lien. . . . " In short, the intent is the same, although awkwardly expressed, as is so clearly stated in the underscored sentence of subsection (2) above.

The judgment of the trial court is affirmed in part, reversed in part, and the cause remanded with direc-

tions to enter judgment in the amount of $2200 for attorney's fees and $30 court costs in favor of Trade Winds Realty Corporation.

MR. JUSTICE McWILLIAMS not participating.