**RIVA RIDGE APARTMENTS, a Colorado limited partnership, American Development Corporation, a California corporation, Plaintiffs-Appellees and Cross-Appellants,**

v.

**ROBERT G. FISHER COMPANY, INC., a California corporation, d/b/a Fischer/CM, and the American Insurance Company, a New Jersey corporation, Defendants-Appellants and Cross-Appellees.**

No. 84CA0579.

Colorado Court of Appeals, Div. II.

May 14, 1987.

Rehearing Denied June 18, 1987.

Certiorari Denied (Fisher) Nov. 9, 1987.

Wolf & Slatkin, P.C., Albert B. Wolf, Jonathan L. Madison, James A. Shpall, Denver, Colo., for plaintiffs-appellees and cross-appellants.

Ireland, Stapleton, Pryor & Pascoe, P.C., Tucker K. Trautman, John H. Evans, William G. Imig, Denver, for defendants-appellants and cross-appellees.

SMITH, Judge.

Defendants, Robert G. Fisher Company, Inc. (Fisher) and The American Insurance Company (bonding company), appeal the joint and several judgment of the trial court entered in favor of plaintiffs in the amount of $4,729,130 on their claims arising out of the alleged breach of a construction management agreement. Plaintiffs, Riva Ridge Apartments (Riva Ridge), a limited partnership, and its successor in interest, American Development Corporation (ADC), cross-appeal the trial court's entry of summary judgment denying plaintiff's claim for punitive damages. We affirm in part, modify in part, and reverse in part.

In June 1978, Riva Ridge entered into a contract wherein Fisher agreed to serve as construction manager for an apartment complex it was building in Lakewood, Colorado. Pursuant to the written construction management agreement, Fisher agreed to manage the construction and it guaranteed both that the total building cost would not exceed a fixed dollar amount and that the project would be completed within established deadlines.

The final guaranteed cost was subject to adjustment only as a result of owner initiated changes or unavoidable delays. However, if the costs as finally agreed to by the parties exceeded the guaranteed maximum amount, Fisher was obligated to bear the additional cost, and, if the deadlines were not met, it was required to pay liquidated damages for the delay. Alternatively, Fisher was entitled to bonuses for early completion of the various project buildings.

In connection with the agreement, Fisher as principal and the bonding company as surety executed a performance bond in the amount of $3,934,000 securing Fisher's performance. The bonding company's obligations under the performance bond were conditioned upon Fisher's having defaulted and plaintiffs having performed all of their obligations under the construction management agreement.

Various problems and delays occurred during construction of the apartments, which were changed during construction to condominiums, and ADC, successor to Riva Ridge, ultimately discharged Fisher as construction manager in February 1979. Demand was made upon the bonding company to complete Fisher's performance under the performance bond but it refused to do so.

ADC subsequently completed seven of the ten buildings included in the project, and at the time of trial had entered into a contract for completion of the remaining three buildings. The cost to complete all ten of the buildings is substantially in excess of the original price guaranteed by Fisher. Plaintiffs initiated this suit against Fisher and the bonding company to recover the additional costs incurred in construction of the condominiums.

I.

We first address plaintiffs' contention raised on cross-appeal that the trial court erred, prior to trial, in granting a partial summary judgment dismissing its claim for

punitive damages. We agree that this was error.

■ Plaintiffs alleged in their complaint, *inter alia*, that the bonding company's refusal to remedy Fisher's default, to complete the project or to obtain others to complete the project, as required by the terms of the performance bond, involved conduct which, in itself, constituted outrageous conduct and a wilful and wanton disregard of the rights of plaintiffs. Based on these allegations, they sought an award of punitive damages in excess of $400,000.

Defendants' motion for summary judgment sought dismissal of that claim on the basis that, as a matter of law, exemplary damages cannot be awarded on a contract claim. In granting this motion the trial court concluded that despite the wording of plaintiffs' complaint, this claim was, in essence, one sounding in contract and that, therefore, plaintiffs were not entitled to exemplary damages as a matter of law.

In *Davies v. Bradley*, 676 P.2d 1242 (Colo.App.1983), we held:

"Exemplary damages are not ordinarily a proper remedy in breach of contract cases.... Where, however, ... the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based is present, and exemplary damages may be awarded though the action sounds in contract."

*See also Podleski v. Mortgage Finance, Inc.*, 709 P.2d 18 (Colo.App.1985); *Collister v. Ashland Oil Co.*, 687 P.2d 525 (Colo. App.1984).

Here, under the rule in *Davies v. Bradley, supra*, plaintiffs' factual allegations are, when liberally construed, sufficient to assert a claim for punitive damages under § 13–21–102, C.R.S. (1979 Cum.Supp.). The trial court, therefore, erred in determining that plaintiffs' complaint failed to state a cognizable claim for relief and, thus, in granting defendants' motion for summary judgment on this issue.

## II.

Trial was to the court and consumed some 34 days. Defendants contend that the rulings and comments of the trial court, throughout the trial, indicate that it was biased in favor of plaintiffs and that they were, thus, not afforded a fair and impartial trial. We do not agree.

■ The rulings of a judge, even if erroneous, numerous, and continuous are not sufficient in themselves to show bias or prejudice. *See Saucerman v. Saucerman*, 170 Colo. 318, 461 P.2d 18 (1969); *In re Marriage of Johnson*, 40 Colo.App. 250, 576 P.2d 188 (1977). Here, although some of the rulings of the trial court may have been erroneous and/or inconsistent, the record does not disclose any bias or prejudice. It is true that the comments of the trial court which appear in the record indicate that it became frustrated with the inordinate amount of time the trial was taking and that it increasingly intervened in order to expedite the orderly presentation of the evidence. However, a careful examination of the record, *in toto*, has convinced us that neither the comments of the trial court nor its actions in expediting the trial operated to deny defendants a fair and impartial trial. Likewise, the trial court's conduct does not demonstrate any bias or prejudice on its part toward the defendants.

## III.

■ Defendants next argue that, inasmuch as negligence was not separately pled as a claim for relief, the trial court erroneously awarded damages based on its finding that Fisher was negligent in performing its duties under the contract. We disagree.

The claim upon which the court awarded damages was adequately pled in breach of contract. The trial court's finding that Fisher had been negligent in performing its duties under the contract merely supported its ultimate finding and conclusion that there had been a substantial breach of the construction management agreement. *See* C.R.C.P. 8.

## IV.

Defendants next argue that the trial court erred in failing to apply the proper legal standard in determining that the bonding company was liable under the terms of the performance bond. We disagree.

The performance bond provided as general conditions precedent to the obligation of the surety that: (1) the contractor must have defaulted under the construction management agreement; (2) the default must have been declared by the owner; and (3) the owner must have performed all of its obligations under the construction management agreement. We agree with defendants' contention that because their answer denied that these conditions precedent had been fulfilled, plaintiffs had the burden of establishing at trial that each of the conditions precedent had, in fact, occurred. C.R.C.P. 9(c).

We do not agree, however, with defendants' assertion that the trial court did not require plaintiffs to meet this burden of proof. The trial court expressly found that Fisher did not "closely supervise or coordinate the work necessary to complete the project in accordance with the contract documents," and that plaintiffs' declaration of default and termination of Fisher's services was "justified by Fisher's substantial and material contract breaches and neglect." These findings are supported by the record.

■ The bonding company contends that the trial court's finding that plaintiffs had substantially performed all of their obligations under the construction management agreement was not sufficient by itself to impose an obligation on it under the bond. Again, we disagree.

It is true that a surety is not bound beyond the letter of its contract. *See People v. National Surety Co.*, 67 Colo. 375, 176 P. 948 (1919). However, here, the trial court found not only that plaintiffs had substantially performed their obligations under the construction management agreement, but also that plaintiffs did not unreasonably hinder, delay, or interfere with the performance of defendants' obligations.

We interpret this language to mean that while there may not have been precise compliance with each duty of plaintiffs under the agreement, any deviation by the plaintiffs was *de minimus* and did not prejudice Fisher or the bonding company. The general rule is that in order to relieve a compensated surety from liability where there has been a deviation from the terms of the contract, the surety must be prejudiced thereby. *National Union Fire Insurance Co. v. Denver Brick & Pipe Co.*, 162 Colo. 519, 427 P.2d 861 (1967). Thus, the trial court's findings of fact and resultant conclusion that plaintiffs had performed all conditions precedent and were, in fact, entitled to performance under the bond are supported by the evidence and will not be disturbed on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## V.

Defendants further contend that the trial court made numerous improper evidentiary rulings which, when considered either separately or cumulatively, require reversal.

We have reviewed all of the rulings which defendants claim were improper, and while we agree that some of them were erroneous, we conclude that, when considered either separately, or cumulatively, they do not rise to the level of reversible error, particularly since trial was to the court. *See In re Marriage of Lester*, 647 P.2d 688 (Colo.App.1982); CRE 103.

## VI.

■ Defendants next argue that the trial court erred in awarding plaintiffs damages under the terms of the construction management contract for those portions of the delay in completion attributable to the period between termination of Fisher and ultimate completion. We disagree.

The construction management agreement provided that Fisher would be liable for a "penalty" to be paid for every calendar day that substantial completion of the project exceeded a scheduled number of weeks. The amount of the "penalty" was calculated on the basis of anticipated interest costs which would be incurred by the

owner on construction loans while buildings were not completed and revenue producing.

The agreement, which was written by Fisher, does not limit liability for delay in any way, nor does it have provisions specifically addressing liability in the event that the owner terminated Fisher's ability or right to proceed under the contract.

The intent of the parties to a contract is to be determined where possible from the language of the instrument itself. Contracts which are complete, clear in their terms, and free from ambiguity are to be enforced in accordance with the expressed intention of the parties. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (Colo.1978). Further, even if there were any ambiguities here, the contract must be construed against the party that drafted it. *Green Shoe Manufacturing Co. v. Farber*, 712 P.2d 1014 (Colo.1986).

Accordingly, because the agreement specifically provided for these payments without limitation, and because the trial court did not find that the delays incurred after Fisher was terminated were unreasonable, its award of liquidated damages based on this provision of the construction management agreement was not error.

## VII.

■ Asserting that the damages for delay arose exclusively under the construction management agreement to which the bonding company was not a party, defendants contend that the trial court erred in entering judgment for these damages jointly and severally against Fisher and the bonding company. We disagree.

In the event of Fisher's default under the performance bond, the bonding company was obligated 1) to remedy promptly the default, 2) to complete the contract *in accordance with its terms and conditions,* or 3) to hire another contractor to complete the contract *in accordance with its terms and conditions.*

Since one of the terms of the construction management agreement was that a penalty would be paid in the event of delays, the bonding company was jointly and severally liable for its payment.

## VIII.

Defendants next argue that the damage award is not supported by the evidence. Specifically, they contend that after Fisher was terminated from the project, various and sometimes extensive changes were made in the construction plans. They allege that the evidence used by the trial court to calculate damages was not based upon the plans and specifications which Fisher originally contracted to build, but rather was based upon costs arising out of the plans as changed after Fisher was terminated. We disagree.

Our review of the record shows that the amount of damages and the manner of its calculation were hotly contested issues at trial. Both sides presented extensive damage evidence, and both had experts who testified to the difference in costs incurred because of revisions subsequently made on the project after Fisher was terminated.

Because the trial court's calculation of damages incurred by Fisher's breach of its contract is supported by evidence in the record, it is binding on review. *Page v. Clark, supra.*

■ However, we do note one error in the trial court's award of damages which is not supported by the record. The court awarded plaintiffs the sum of $2,731,768 as the reasonable value for the expected costs of completion of the three condominium buildings which had not yet been built, based upon the design and specifications agreed to by Fisher. However, the evidence presented at trial showed that plaintiffs had entered into a contract for construction of these three buildings for the price, when adjusted to the original plans, of $2,725,571. Therefore, on remand, the damages awarded to plaintiffs should be reduced by the sum of $6,197.

## IX.

■ Defendants next argue that the trial court erred in finding that the bonding

company was jointly and severally liable for the entire amount of the damage award. We agree.

The terms of the performance bond unequivocally limited the bonding company's liability to $3,934,000.

Again, when language used in a contract is plain, its meaning clear, and no absurdity is involved, the agreement must be enforced as written. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., supra.* The maximum amount of damages which can be assessed against the bonding company, therefore, is $3,934,000. Insofar as the judgment liability of the bonding company exceeds that amount, that portion of the judgment was entered in error.

### X.

Defendants' last argument is that the trial court erred in imposing interest on the entire judgment from February 10, 1979, the date Fisher was terminated from the project. We agree.

Under § 5–12–102(2), C.R.S. (1986 Cum. Supp.), "[C]reditors shall be allowed to receive interest ... at the rate of eight percent per annum ... for all moneys after they become due, on any bill, bond, promissory note, or other instrument of writing...."

An amount becomes due on a performance bond when a specific demand for reimbursement is made upon the surety. *Asphalt Paving Co. v. United States Fidelity & Guaranty Co.*, 671 P.2d 1013 (Colo.App. 1983).

■ The trial court did not make any findings, nor is it clear from the record, that any specific demand for reimbursement was made upon the bonding company prior to trial. While the complaint filed on March 16, 1979, requested compensatory damages incurred as a result of the bonding company's breach of the performance bond, it is not clear what, if any, costs had, in fact, been incurred at that time. We, therefore, conclude that prejudgment interest is proper only from the date on which the trial commenced.

■ Fisher's liability for prejudgment interest arises under § 5–12–102(1)(a), C.R. S. (1986 Cum.Supp.) which provides in pertinent part: "Interest shall be at the rate of eight percent per annum compounded annually for all moneys ... after they are *wrongfully withheld* or after they *become due* ..." (emphasis supplied) Section 5–12–102(3), C.R.S. (1986 Cum.Supp.) states: "Interest shall be allowed ... even if the amount is unliquidated at the time of wrongful withholding or at the time when due."

There is nothing in the record showing any "wrongful withholding" of any money from plaintiffs, or any demand for or expectation of payment by plaintiffs at any time prior to the filing of this suit. Until such time as payment for services is expected or demanded, payment cannot be deemed to have become due and nonpayment cannot be deemed a wrongful withholding. Consequently, the trial court should have awarded plaintiffs prejudgment interest against Fisher only from the date they filed their complaint in this action. *See W.H. Woolley & Co. v. Bear Creek Manors*, 735 P.2d 910 (Colo.App. 1986); *Danburg v. Realties, Inc.*, 677 P.2d 439 (Colo.App.1984).

That portion of the judgment dismissing plaintiffs' punitive damages claim is reversed, the award of actual damages and entitlement to interest is modified in part, and the cause is remanded for trial on plaintiffs' claim for exemplary or punitive damages. The remainder of the judgment is affirmed.

VAN CISE and KELLY, JJ., concur.