## LOTHROP v. UNION BANK.

1. SILENCE, A RULE WITH EXCEPTIONS.— He who is silent appears to consent is a rule having many exceptions and qualifications, and is to be considered with more or less caution according to the circumstances of the case.

2. EVIDENCE SOMETIMES PRODUCED BY SILENCE AS WELL AS BY SPEECH.— In a suit upon a promissory note by the payee against one whose name was signed thereto as maker, the only defense pleaded was the non-execution of the note. The testimony tended to show that the payee took the note believing the signature of defendant to be genuine; that defendant was notified by the payee holding the note that the same was about to become due, and that defendant paid no attention to the notice; that the payee presented the note shortly after its maturity to defendant in person for payment, and that defendant looked at the note, but said nothing special, did not

deny its execution; that defendant did not testify at the trial, nor offer any excuse for not testifying. *Held:*

(1) That the silence of defendant under the circumstances was legitimate evidence in behalf of plaintiff, tending to prove the execution of the note by defendant or by his authority.

(2) That declaration of defendant made to third parties shortly after the note matured, that he was allowing a certain person to use his, defendant's, name for small amounts, was competent evidence in behalf of plaintiff for the same purpose.

(3) That the sworn answer of defendant, denying the execution of the note, was not in any sense evidence in the case.

(4) That in the absence of evidence in behalf of defendant, the finding of the issue in favor of plaintiff upon the evidence aforesaid could not be disturbed by the appellate court.

*Appeal from Superior Court of Denver.*

THIS was an action by the Union Bank of Denver, plaintiff below, against Charles H. Scott and Wilbur C. Lothrop upon a promissory note, dated June 9, 1885, payable sixty days after date, alleged to have been executed by them in favor of the bank for the sum of $300 with interest.

The defendant Scott made no defense. The defendant Lothrop answered denying the execution of the note, and alleging that if any such note was executed the signature of his name thereto was not genuine but a forgery. This was the only defense interposed.

Plaintiff filed two replications. The first is, in form, technically speaking, a replication of estoppel *in pais*. It avers, in substance, that defendant, by reason of certain conduct on his part in relation to the note, ought to be precluded from denying its execution; certain other matters, to the effect that plaintiff had been specially injured by defendant's said conduct, are also specially set forth in the replication.

The second replication avers, in effect, that Lothrop authorized and empowered Scott, his co-defendant, to sign his (Lothrop's) name to the note, and that the same was so signed with his knowledge and consent. The trial was to the court without a jury, resulting in a finding and judgment for plaintiff. The defendant Lothrop appeals.

Mr. W. B. MILLS, for appellant.

Mr. S. P. ROSE and Mr. M. G. CAGE, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error are numerous, but the principal one necessary to be considered is the alleged insufficiency of the evidence to warrant the finding and judgment of the court. The evidence was quite meager. Neither Mr. Scott nor Mr. Lothrop testified at the trial.

Mr. Todd, cashier of the plaintiff bank, testified that he took the note believing Lothrop's signature thereto to be genuine; but he would not swear to its genuineness on the trial. He further testified that shortly after the note became due he called Mr. Lothrop's attention to the note at the bank, showing him two notes, each for $300, one due in thirty days after date, and the other the note in suit, both purporting to have been executed by Lothrop and Scott; that Mr. Lothrop did not deny his signature to either of the notes; that he looked at them, but said nothing special; did not say that the notes, or either of them, were forgeries.

Mr. Roeschlaub, a clerk in plaintiff's bank, testified in substance that notice was sent to Mr. Lothrop through the mail, properly addressed, with postage prepaid, shortly before the note in suit became due, calling his attention to the note and the time of its maturity, as is the custom with banks; that on the envelope in which the notice was inclosed was a printed request to return to the bank if not called for in ten days, and that it was not returned. Mr. Roeschlaub also corroborated in substance Mr. Todd's testimony about the presentation of the two notes to Mr. Lothrop; and further testified that shortly after such presentation the thirty-day note was paid, and that a small amount was paid on the note in suit, the payments being made by Scott.

Mr. Schooly testified in behalf of plaintiff that he had a

talk with Mr. Lothrop some time in October, 1885, in which he called Mr. Lothrop's attention to the fact that certain notes were being offered in the market with his and Scott's names signed to them, and asked if the notes were all right. That Lothrop said they were; he had been helping Scott some; that Scott needed money, and that he was allowing him to use his name for small amounts, and that the notes would be taken care of, and that Scott was all right. Schooly further testified that he told Lothrop his notes were around almost every day; that Lothrop said he would see Scott about it; said he was not flooding the market with notes; said he was going to see Scott and put a stop to it.

The testimony of Mr. Legge was not particularly important, though to a certain extent it corroborated the testimony of the other witnesses in relation to Mr. Lothrop's conduct when spoken to concerning notes in circulation purporting to have been signed by himself and Mr. Scott.

It is contended that the testimony of Schooly and Legge was not competent under the issues; but we are of opinion that plaintiff had a right to introduce the evidence as tending to show that Mr. Lothrop had authorized Scott to sign his (Lothrop's) name to promissory notes like the one in suit, and put the same in circulation. The weight of such evidence may have been slight, but the weight is not for our consideration on this review.

Under the issues the burden was upon plaintiff to establish by a preponderance of the evidence either:

1. That Lothrop executed the note; or,

2. That he was estopped by his conduct from denying that he had executed it.

If plaintiff succeeded in establishing affirmatively either of these propositions, he was entitled to recover. The testimony of Todd, Roeschlaub, Schooly and Legge tended to prove that Lothrop either executed the note himself, or, what is the same in law, authorized Scott to execute it for him. By the testimony of these witnesses plaintiff made out a *prima facie* case. No evidence whatever was pro-

duced in behalf of defendant. We need not, therefore, consider the sufficiency of the replication of estoppel as a matter of law, or the evidence in support thereof as a matter of fact.

The defendant Lothrop did not testify in the case, nor was his failure to testify in any way explained. His silence at the trial, considered in connection with his previous conduct in relation to the note in controversy, fully warrants the application of the legal maxim, " *Qui tacet consentire videtur.*" Starkie's Ev. (7th Am. Ed.) 573, 937; also (10 Am. Ed.), 861; *Stimson v. Vroman*, 99 N. Y. 82; *McClenkan v. McMillan*, 6 Barr (Pa.), 366; 1 Greenleaf's Ev., sec. 197–199 and notes; 2 Wharton's Ev., sec. 1136 *et seq.;* 1 Phillips' Ev., secs. 436–445.

The general rule, " He who is silent appears to consent,"; undoubtedly has many exceptions and qualifications, and is always to be considered with more or less caution according to the circumstances of the case. In the trial of this cause, however, there can be no doubt that it was peculiarly applicable. The subject was one of common business experience. The notice sent to Mr. Lothrop in accordance with the usual banking custom, calling his attention to the fact that the bank held the note against him, which was about to mature, naturally called for some expression of dissent or objection on his part, if he did not previously know of the note or consider himself liable upon it. Hence, his failure to make such objection within reasonable time thereafter furnished some foundation for the inference that he was thus liable.

Again, when, shortly after the maturity of the note, Mr. Lothrop was called to the counter of the plaintiff bank, and two notes, the one in suit and another, purporting to have been signed by Scott and himself, were presented to him by the cashier, who called his attention to the fact that the notes were past due, his failure to denounce the notes as forgeries or to deny that he executed them, or either of them, or to say anything indicating that he was

not bound to pay them, was conduct from which an infer-
ence of the genuineness of the notes and his liability
thereon would naturally be drawn. The payment of one
of these notes and the making of a small payment upon the
other the next day after such presentation, even though
the payments were made by Scott, were circumstances not
inconsistent with the inference that Lothrop recognized
the notes as valid obligations incurred by himself.

And finally, when upon the trial the conduct of Mr.
Lothrop concerning the note, as above shown, was given in
evidence, and he thereupon failed to go upon the witness
stand to deny the execution of the note or to explain his
conduct when the note was presented to him, the inference
that he executed the note or authorized it to be executed
became, for the purposes of that trial, very forcible and con-
vincing. The conclusion reached by the trial court was
consistent with the ordinary course of human experience
in such matters. No reason, other than the defendant's
liability upon the note, was disclosed at the trial to show
or explain why he should have so long kept silent in ref-
erence to a matter affecting his interest under the facts and
circumstances as proved. See authorities above cited.

If Mr. Lothrop had gone upon the witness stand and tes-
tified that he did not execute the note nor authorize it to
be executed, and had given some reasonable explanation of
his previous conduct in regard to the note, the question of
his liability might have appeared in a very different light.
It is true, plaintiff's evidence shows that after December 1,
1885, and when he became aware of the extent to which
Mr. Scott had used his name, he declared to Mr. Todd that
the note was a forgery. But it could not be expected that
this declaration in his own interest, made without the sanc-
tion of an oath, and without giving his opponent an oppor-
tunity for cross-examination, would weigh much against
his own previous conduct.

The sworn answer of the defendant denying the execu-
tion of the note was not in any sense evidence in the case.

Its only effect was to throw the burden of proof of the execution of the note upon plaintiff.   It did not in any manner excuse defendant from going upon the witness stand and submitting to cross-examination.   The defendant having failed to testify, or to offer any testimony in his own behalf, the action of the court in finding the issue against him, upon the uncontradicted evidence introduced in behalf of plaintiff, cannot be disturbed.   The judgment is accordingly affirmed.

*Affirmed.*

CHIEF JUSTICE HELM:  I concur in the foregoing conclusion.