**ELFINWILD VOLUNTEER FIRE DEPARTMENT, Plaintiff,**

v.

**INTERNATIONAL FIDELITY INSURANCE COMPANY, Defendant.**

Civ. A. No. 80–1109.

United States District Court,
W. D. Pennsylvania.

Jan. 5, 1982.

Joseph Vogrin, III, Pittsburgh, Pa., for plaintiff.

Charles W. Kenrick, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

SIMMONS, District Judge.

### I

*Opinion*

Defendant, International Fidelity Insurance Company, (IFIC) has moved for a partial summary judgment in this matter on the basis of an alleged variation of the risk it undertook as a surety, involving the construction and delivery of a firetruck. IFIC asserts that the variation is both material and prejudicial and therefore discharges it from liability to the extent the variation prejudiced it as a surety. Plaintiff, Elfinwild Volunteer Fire Department, (Elfinwild) the obligee in the suretyship agreement, entered into a separate contract in March 1979, with Hamerly Custom Production, Inc. (Hamerly) for the construction of a custom pumper firetruck. The terms of the contract required no initial downpayment, with the total contract price to be paid cash on delivery of the custom pumper firetruck.

Hamerly was also serving as principal/obligor in the suretyship agreement since Hamerly agreed to supply Elfinwild with a performance bond. The amount of $1,629, was added to the original contract price of $89,304, to cover the cost of the bond resulting in a final contract price of $90,333. IFIC as a surety issued the aforementioned performance bond No. 064586 on July 24, 1979, to secure the construction and delivery of the firetruck ordered by Elfinwild from Hamerly. The bond in the sum of $90,933, incorporated by reference the contract entered into between Elfinwild and Hamerly.

Elfinwild in October of 1979, after being presented with a certain proposal by Hamerly, made a payment of $50,000, to Hamerly without IFIC's knowledge, authorization or consent. Said proposal as stated by Hamerly was that: "Hamerly will pay interest in the amount of 12% per year on any amounts of monies deposited with us at any time during the life of the contract from date of signing to date of delivery. The interest is calculated at 12% per year based on 365 days per year." An employee of Hamerly has since absconded with those funds, and Hamerly has discontinued its business without observing its contractural obligation to deliver a custom pumper firetruck.

Plaintiff and Defendant have chosen to characterize the $50,000 payment by Elfinwild to Hamerly in different terms. Plaintiff considers the $50,000 a downpayment on the contract price. Defendant believes it was an investment by Elfinwild in an attempt to gain interest during the period the firetruck was being constructed at an attractive rate offered by Hamerly. While the characterization of the payment is a disputed issue between the parties, it is not a genuine issue as to a material fact in this matter. The dispute concerning the intended use of said $50,000, does not affect the factual determination of whether there was a modification of the contract, since in either case the payment of said $50,000 to Hamerly, materially increased the surety's risk without its consent.

" 'A surety has the right to stand upon the very terms of his obligation and is bound no further,' and any material alteration of a contract by the principal parties without the surety's assent is fatal to its validity as against the surety: *Jacob Sall B.*

& L. Assn. v. Heller, 314 Pa. 237, 242, 171 A. 464." *Spring Garden B. & L. v. Rhodes,* 126 Pa.Superior Ct. 102, 190 A. 530 (1937). Defendant IFIC contends that the terms of the contract were materially altered when Elfinwild and Hamerly came to a new understanding and when the admitted advance payment of $50,000 was made to Hamerly, prior to the completion of the truck, with the balance of the contract price to be paid on delivery. IFIC further asserts that the performance bond was written on the basis of the "cash on delivery" terms in the contract, and on that basis it calculated its risks and agreed to be bound.

█ The Court finds the Defendant's arguments to be persuasive and in accord with common sense-the best policy. The advance payment of $50,000 to Hamerly prior to the delivery of the truck, substantially increased the chances of a loss due to a default or insolvency of Hamerly which was insured against by IFIC. *Phillips v. American Liability & Surety Co.,* 309 Pa. 1, 162 A. 435 (1932). When IFIC initially reviewed its risks as a surety for the contract, payment to Hamerly was to be made in full only upon delivery of the firetruck in final form and in accordance with the specifications. Hamerly was provided with an incentive to complete the construction and deliver the firetruck, if it wanted to be compensated for its efforts. Because Elfinwild changed the method of compensation by advancing $50,000 to Hamerly, prior to the completion and delivery of the truck and contrary to the terms of the purchase agreement, the incentive for Hamerly to finish the work was diminished, thereby substantially increasing the likelihood of the work being abandoned prior to completion when Hamerly became insolvent.

Since the advance payment removed the incentive for Hamerly to complete the work in order to receive payment and therefore increased the risk of non-performance, the surety is released to the extent of said $50,000. IFIC should not be subjected to a risk which is materially and adversely different from the risk it undertook to guarantee in the first instance. Defendant, IFIC is therefore discharged from liability only in the amount of $50,000, which is the amount by which it was prejudiced due to the improper advance payment to Hamerly.

█ Elfinwild alternatively argues that even if there was a material alteration which prejudiced IFIC, the right to be discharged was waived because of IFIC's silence in failing to inform Elfinwild that it was discharged as a surety. This argument is without merit. Waiver of IFIC's rights would have required an affirmative act with full knowledge of the discharge which would indicate the continuation of the suretyship relationship which Elfinwild detrimentally relied upon. *Spring Garden B. & L.* It is undisputed that IFIC took no affirmative act after it was aware of the material alteration that reasonably could be construed by Elfinwild to signify that IFIC was continuing to act as a surety after the payment of said $50,000 to Hamerly.

It is noted that, Plaintiff, in making its demand on the Defendant for damages, received an estimate from another manufacturer that an equivalent firetruck would .cost an additional $21,737, above the contract price. Plaintiff then on May 8, 1980, demanded from Defendant "$21,737, which is the difference between the contract price with Hamerly and the estimate to have this contract performed by another manufacturer." See attached Plaintiff's Exhibit No. 31. Defendant, IFIC, in its role as a surety for the performance of the contract admitted liability to the Plaintiff for the "difference between the contract amount and the amount which must be paid to another company to obtain the required vehicle." See attached Plaintiff's Exhibit No. 35. It is agreed to and undisputed between the parties that the increased cost of the contract for the construction of the firetruck caused by Hamerly's default is the sum amount of $21,737. Of course, Elfinwild still retains the sum of $40,933, which is the difference between the original contract price and $50,000. It is therefore the conclusion of the Court, that as matter of law Elfinwild is entitled to $21,737, with interest at the legal rate, there being no genuine issue as

to the amount of damages caused by the default.

Plaintiff's Exhibit "31"

JOSEPH E. VOGRIN, III
ATTORNEY AT LAW
2208 LAWYERS BUILDING
428 FORBES AVENUE
PITTSBURGH, PA. 15219

TELEPHONE
412.261.0905

May 8, 1980

R. H. Shepherd, Jr.
International Fidelity Insurance Company
24 Commerce Street
Newark, New Jersey 07102

CERTIFIED MAIL : Number 2518241

In re: Hamerly Custom Productions, Inc.
Bond Number: 064586
SBG Number: 30309-045035

Dear Mr. Shepherd:

Pursuant to the above bond dated July 24, 1979, International Fidelity Insurance Company is bound in the penal sum of Ninety Thousand Nine Hundred Thirty Three ($90,933.00) Dollars for the faithful performance of a written contract dated May 9, 1979 between Hamerly Custom Productions, Inc., P.O. Box 15, Shartlesville, Pa. 19554 and the Elfinwild Volunteer Fire Department, Glenshaw, Pennsylvania 15116.

Please be advised that Hamerly Custom Productions, Inc., has breached the said contract. It is Elfinwild's position that Hamerly has repudiated said contract by its failure and/or refusal to provide adequate assurance of due future performance since requested to do so on March 24, 1980.

Demand is hereby made that International Fidelity Insurance Company pay the following:

1) $50,000.00 plus interest at twelve (12%) per cent per annum from October 13, 1979 till date of repayment to reimburse Elfinwild for monies deposited with Hamerly;

2) $21,737.00 which is the difference between the contract price with Hamerly and the estimate to have this contract performed by another manufacturer.

If the aforesaid damages are not received within thirty (30) days of this letter, suit will be filed against International Fidelity Insurance Company.

Very truly yours,

Joseph E. Vogrin, III

cc: Ronald L. Hamerly

President

Hamerly Custom Productions, Inc.

P.O. Box 15

Shartlesville Exit, Route 22, I-78

Shartlesville, Pennsylvania 19554

Plaintiff's Exhibit "35"

SILLS BECK CUMMIS RADIN & TISCHMAN
A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
33 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
(201) 643-3232   N. Y. (212) 349-7600

ATLANTIC CITY OFFICE:
ONE SOUTH NEW YORK AVENUE
ATLANTIC CITY, NEW JERSEY 08401
(609) 344-2800

May 30, 1980

Joseph E. Vogrin, III, Esquire
2208 Lawyers Building
428 Forbes Avenue
Pittsburgh, PA 15219

Re: International Fidelity Insurance Company

    Hamerly Custom Productions, Inc.

    Bond No. 064486

Dear Mr. Vogrin:

Thank you for your letter of May 27, 1980 relative to the above entitled matter.

Since it appears that Hamerly Custom Productions, Inc. is out of business and will not fulfill its contractual obligation to provide your client with the vehicle specified in the bond and contract, my client will pay to your client the difference between the contract amount and the amount which must be paid to another company to obtain the required vehicle. In that regard, we require that at least two other bids be obtained from reputable companies in order to mitigate damages on this claim. If you will send me a set of the specifications and a list of the bidders, we will communicate with them and other companies in an effort to obtain bids for the required vehicle to be supplied to your client.

My client will not reimburse your client for any monies they may have invested with Hamerly Custom Productions, Inc. The bond and contract provided that payment would be made on delivery of the vehicle. The separate arrangement made between Hamerly Custom Productions, Inc. and your client in October 1979 was totally outside the scope of the bond and contract and is not the responsibility of International Fidelity Insurance Company.

I would appreciate receiving the above documents from you as soon as possible so that we may proceed to satisfy that portion of the claim entitled to coverage under the bond.

       Very truly yours,

       /s/ Thomas J. Demski

    THOMAS J. DEMSKI

TJD:b

cc: International Fidelity Insurance Company