Frank J. HABERL, Petitioner,

v.

Eugene A. BIGELOW and Alyce
M. Bigelow, Respondents.

No. 92SC103.

Supreme Court of Colorado,
En Banc.

July 12, 1993.

Leeon E. Hayden, Lakewood, Jacobson & Dudgeon, Ethan A. Jacobson, Lakewood, for petitioner.

Ducker, Dewey & Seawell, P.C., Thomas C. Seawell, Denver, Parcel, Mauro, Hultin & Spaanstra, P.C., Richard P. Barkley, Denver, for respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Bigelow v. Nottingham*, 833 P.2d 764 (Colo.App.1991), the court of appeals affirmed the trial court's judgment in favor of the respondents, Eugene A. Bigelow and Alyce M. Bigelow (the Bigelows), against the petitioner, Frank J. Haberl (Haberl), on a promissory note executed by Haberl and his wife, Dorothy Haberl. In so doing, the court of appeals affirmed the trial court's conclusions that Haberl consented to the subordination of a deed of trust to real property executed in connection with the note; that the applicable statute of frauds did not render such consent invalid; and that the provisions of section 4–3–401(1), 2 C.R.S. (1992), did not operate to discharge Haberl from liability under the note even though the terms thereof were subsequently modified by an instrument he did not sign. Having granted Haberl's petition for certiorari to review these determinations, we reverse the judgment of the court of appeals and remand the case to that court with directions.

**1.** Midland/Western Federal Savings and Loan

## I

In October 1967, the Bigelows executed a promissory note in the amount of $145,000 secured by a deed of trust in favor of Empire Savings & Loan Association (Empire) in connection with the purchase of an apartment building located in Arapahoe County, Colorado. On January 6, 1976, the Bigelows sold the property to the Haberls. The Haberls took the property subject to the 1967 note and deed of trust and jointly executed a promissory note to the Bigelows in the amount of $112,018.91 together with a second deed of trust (the Bigelow deed of trust). The security instrument incorporated by reference a rider providing that if the Haberls refinanced their indebtedness, the Bigelow deed of trust would be subordinated to any new deed of trust, the Haberls would pay a higher annual interest rate on the balance of the Bigelow note, and the period of time within which the Haberls' periodic payments were to be made was extended.

In October 1980, the Haberls sold the property to Marathon Realty, Inc. (Marathon). In connection with this sale Marathon executed a note for $166,524 (the Haberl note) and a third deed of trust (the Haberl deed of trust), and the Haberls agreed that in the event the property were refinanced the Haberls would subordinate the Haberl note and deed of trust to any new security instrument. On October 9, 1983, the Haberls assigned the Haberl deed of trust to United Bank of Skyline.

In November 1983, the property was purchased by American Properties Equities, a Colorado general partnership whose general partners included David Nottingham, Philip Hazouri, James Giasafakis, and Richard Elliott (hereinafter referred to collectively as APE). In connection with this transaction APE assumed and agreed to pay the three existing notes.

In February 1984, APE refinanced the property. In connection with this transaction, APE executed a $400,000 promissory note and a fourth deed of trust in favor of Midland Federal Savings and Loan Association [1] (the Midland note and deed of trust);

Association became the successor in interest to

the Bigelows were requested to subordinate the Bigelow deed of trust to the Midland deed of trust; the Haberls were requested to subordinate the Haberl deed of trust to the Midland deed of trust; and APE paid off the 1967 Empire note. As a result, the Empire deed of trust was released and the Bigelow deed of trust assumed first priority.

On February 29, 1984, the Haberls, through their assignee, the United Bank of Skyline, subordinated the Haberl deed of trust to the Midland deed of trust. On November 16, 1984, the Bigelows and APE executed an assumption agreement. The agreement provided that the Bigelows would subordinate the Bigelow deed of trust to the Midland deed of trust, APE would assume primary liability for repayment of the Bigelow note,[2] and the interest rate and amount of monthly payments due on the Bigelow note would be increased according to the terms of the rider signed by the Haberls and the Bigelows in connection with the Haberls' purchase of the property. Accordingly, the Midland deed of trust assumed first priority, ahead of both the Haberl and Bigelow deeds of trust. APE subsequently sold the property to APE 1984–A Ltd., a limited partnership whose general partners included Philip Hazouri, David Nottingham, James Giasafakis, and Merlin Resources, Inc.

The Haberls were not parties to the November 16, 1984, assumption agreement and did not execute a written consent to the subordination of the Bigelow deed of trust to the Midland deed of trust. However, prior to November 16, 1984, Hazouri telephoned Haberl, informed Haberl that APE planned to pay off the Haberl note and that subordination of the Bigelow deed of trust to the Midland deed of trust was crucial, and informed Haberl that APE was having problems in obtaining the Bigelows' agreement to such subordination. Haberl did not object or otherwise respond to Hazouri's statements concerning the importance of the subordination of the Bigelow deed of trust.[3]

In November 1985, APE and APE 1984–A, Ltd., paid the Haberl note and the Haberl deed of trust was released. However, APE and APE 1984–A Ltd., ultimately defaulted on the Midland and Bigelow notes. A subsequent foreclosure of the Midland deed of trust resulted in a deficiency.

The Bigelows then instituted this civil action on the Bigelow note against the Haberls, APE, APE 1984–A, Ltd., and Merlin Resources, Inc. The Haberls asserted as a defense that they did not consent to the subordination of the Bigelow deed of trust and that the resultant impairment of collateral and increase in their risk of repayment relieved them of liability pursuant to sec-

Midland Federal Savings and Loan Association as of June 30, 1984.

2. The Haberls became sureties for APE on the Bigelow note by virtue of the assumption agreement, which provides in pertinent part as follows:

> [APE], jointly and severally, hereby assume[s] and agree[s] to pay the principal sum of the Bigelow Deed of Trust and the Bigelow Promissory Note ... together with all other sums as provided in the Bigelow Deed of Trust and the Bigelow Promissory Note, as if the Bigelow Deed of Trust and the Bigelow Promissory Note had originally been executed by [APE], jointly and severally.

3. Hazouri's entire testimony at trial concerning his telephone conversation with Haberl and Haberl's purported consent to the subordination consists of the following testimony elicited on direct examination:

> Q: Can you tell us a little more in your words, what did you say and what did [Haberl] say ...?
> A: I told Mr. Haberl that we were having problems with Dr. Bigelow, obtaining his subordination, we felt that he should give it to us but he would not, and that we were faced with either a lawsuit or a—just forcing him to do it somehow. At that time when I talked to [Haberl], we had no indication that the subordination was forthcoming.
> Q: Isn't it true that you told Mr. Haberl that it was crucial that that subordination be given?
> A: Oh, yes.
> ....
> Q: And when you told Mr. Haberl that this subordination by the Bigelows was crucial to concluding the refinancing, what did he say?
> A: He had no objections. He didn't say anything. But it—I don't—I don't recall any real comment from him.

tion 4–3–606, Comment 3, 2 C.R.S. (1992), of Colorado's Commercial Code (hereinafter the Code).[4]

At the conclusion of a bench trial the trial court found, as the Bigelows conceded, that the "collateral" for the Bigelow note had been impaired by the subordination of the Bigelow deed of trust to the Midland deed of trust.[5] The trial court also determined that the rider executed by the Haberls was personal to the Haberls and

did not constitute general consent by the Haberls to any future subordination.

The trial court dismissed the claim against Dorothy Haberl on the ground that she did not consent to the November 16, 1984, subordination of the Bigelow deed of trust to the Midland deed of trust. However, the trial court held that by failing to voice any objection to the proposed subordination during or after his telephone conversation with Hazouri, Haberl did consent to

---

**4.** The statute provides in pertinent part as follows:

**Impairment of recourse or of collateral.** (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has, to the knowledge of the holder, a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person; except, that failure or delay in effecting any required presentment, protest, or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest, or notice of dishonor is effective or unnecessary; or

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(2) By express reservation of rights against a party with a right of recourse the holder preserves:

(a) All his rights against such party as of the time when the instrument was originally due; and

(b) The right of the party to pay the instrument as of that time; and

(c) All rights of such party to recourse against others.

§ 4–3–606, 2 C.R.S. (1992).

3. The words "to the knowledge of the holder" exclude the latent surety, as for example the accommodation maker where there is nothing on the instrument to show that he has signed for accommodation and the holder is ignorant of that fact. In such a case the holder is entitled to proceed according to what is shown by the face of the paper or what he otherwise knows, and does not discharge the surety when he acts in ignorance of the relation.

*Id.* at Cmt. 3.

The Haberls also filed cross-claims against the other defendants and obtained summary judgments on these cross-claims against APE for repayment of the Bigelow note. Prior to trial, the trial court entered summary judgment for the Bigelows on their claims against APE, APE 1984–A, Ltd., and Merlin Resources, Inc.

**5.** The trial court, the court of appeals, and the litigants describe the effect of the subordination of the Bigelow deed of trust to the Midland deed of trust as an impairment of collateral. Although there is authority to support this characterization of the transaction, *see Poynot v. J & T Devs., Inc.,* 355 So.2d 1052, 1054 (La.App.1978), it is not clear from the record whether the "collateral" used by the parties in this case is intended to refer to the Bigelow deed of trust itself or to the real property underlying that deed of trust. Although the Code does not directly apply to transactions involving real property, it is noteworthy that for purposes of secured transactions subject to the Code, the term "collateral" means "property subject to a security interest." § 4–9–105(1)(c), 2 C.R.S. (1992). *See also Nixon v. Bank One of Eastern Ohio,* 74 Ohio App.3d 550, 599 N.E.2d 742, 744 (1991). The record contains no evidence to suggest that the value of the real property underlying the Bigelow deed of trust was affected by the November 16, 1984, transactions.

The Haberls argued at trial that the November 16, 1984, transactions substantially increased the likelihood that they would ultimately be required to satisfy that note. The Haberls are in essence arguing that their risk of repayment on the Bigelow note was increased when the Bigelows subordinated the Bigelow deed of trust to the Midland deed of trust. However characterized, the impact of the transaction is clear. Prior to November 16, 1984, the proceeds of any sale of the underlying property would be applied to the Bigelow note before being allocated to other interests. After the assumption agreement was executed, approximately $320,000 of the proceeds of any such sale would first be applied to the Midland note. The increase in risk here experienced by the Haberls is contemplated by the term "impairment of collateral" set forth in § 4–3–606. *Wisconics Eng'g, Inc. v. Fisher,* 466 N.E.2d 745 (Ind.App.1984); *Schmuckie v. Alvey,* 758 S.W.2d 31 (Ky.1988); *Ramsey v. First Nat'l Bank & Trust Co.,* 683 S.W.2d 947 (Ky.App.1984); *Hughes v. Tyler,* 485 So.2d 1026 (Miss.1986); *Beneficial Fin. Co. of Norman v. Marshall,* 551 P.2d 315 (Okla.App.1976).

such subordination and was therefore not subject to the protection afforded by section 4–3–606, Comment 3. The trial court entered judgment against Haberl and APE, jointly and severally, on the Bigelow note in the amount of $135,560.53, plus attorney fees, costs, and interest from December 16, 1988. In an unsuccessful post-trial motion to amend judgment Haberl argued, *inter alia,* that he could not have consented to the subordination of the Bigelow deed of trust because any such consent was required to be in writing by the terms of section 38–10–106, 16A C.R.S. (1982) (hereinafter the statute of frauds).

Haberl appealed the trial court's judgment.[6] He initially asserted that he could not be held liable to the Bigelows on the basis of the November 16, 1984, assumption agreement because he did not sign that document. The court of appeals rejected this argument on the ground that Haberl's liability was based on the Bigelow note, not the assumption agreement. The court of appeals also rejected Haberl's argument that he was relieved of liability on the Bigelow note by virtue of section 4–3–606, 2 C.R.S. (1992), of the Code because he did not consent to the subordination of the Bigelow deed of trust. Accordingly, the court of appeals affirmed the trial court's judgment against Haberl.

Haberl petitioned this court for certiorari review of the court of appeals decision. We granted his petition with respect to the following issues:

1. Does a deed of trust constitute an interest in land for purposes of the statutes of fraud, §§ 38–10–106, –108, 16A C.R.S. (1982)?

2. Is the grantor· of a deed of trust required pursuant to the statutes of fraud, §§ 38–10–106, –108, 16A C.R.S. (1982), to give written consent to an agreement to subordinate that deed of trust to another trust deed?

3. May the petitioner be held liable, consistent with § 4–3–401(1), 2 C.R.S. (1973), to the terms of a promissory

note as modified by an agreement that he did not sign?

4. Did the trial court and the court of appeals err in applying the doctrine of consent by silence?

## II

Haberl asserts that the court of appeals and the trial court erred in concluding that he consented to the subordination of the Bigelow deed of trust to the Midland deed of trust. We agree.

The issue of whether Haberl's conduct during and after his telephone conversation with Hazouri constitutes consent by Haberl to the subordination of the Bigelow deed of trust to the Midland deed of trust presents a question of mixed law and fact. In applying the appropriate legal standard to the facts established by the record, we conclude that the trial court erred in concluding that Haberl's consent to the subordination of the Bigelow deed of trust could be implied.

■ The Bigelow note is a negotiable instrument, as it contains both an unconditional promise to pay and a fixed date of payment. *Bank of Kimball v. Rostek,* 161 Colo. 584, 423 P.2d 579 (1967). As such, transactions involving the note are governed by article 3 of the Code, §§ 4–3–101 to –805, 2 C.R.S. (1992). *Capital Investors Co. v. Executors of Estate of Morrison,* 484 F.2d 1157, 1160 (4th Cir.1973) (promissory notes secured by a real estate mortgage are negotiable instruments governed by legal principles unique to such instruments); *Payne v. Mundaca Inv. Corp.,* 562 N.E.2d 51, 55 (Ind.App.1990) ("[a] promissory note is a negotiable instrument.... The note's character as a negotiable instrument is not stripped from it even though it is collateralized by a mortgage."); *In re Cambridge Mortgage Corp.,* 92 B.R. 145, 149 (Bankr.D.S.C.1988) ("[n]egotiable notes are governed by the Uniform Commercial Code ... as adopted in South Carolina and other states. It makes no difference that

---

**6.** The Bigelows and APE also appealed the trial court's judgment. The court of appeals affirmed the judgment insofar as it held APE liable to the Bigelows and the Haberls and dismissed the Bigelows' claim against Dorothy Haberl.

the note is secured by an interest in real estate...."); *Hughes v. Tyler,* 485 So.2d 1026, 1029 (Miss.1986) ("while the U.C.C. does not apply to security interest in realty, the promissory note is not a security interest in realty. The note does not cease to be negotiable even though it is secured by a mortgage."); *see* 6A R. Anderson, *Anderson on the Uniform Commercial Code* § 3–606:7 at 353 (3d ed. 1993).

The extent of Haberl's liability on the Bigelow note is thus governed by the discharge provisions of section 4–3–606, 2 C.R.S. (1992). *See Farner v. Cole,* 778 P.2d 688, 692 (Colo.1989). Section 4–3–606(1)(b) of the Code describes the circumstances in which a party is discharged from liability on a note as follows:

> **Impairment of recourse or of collateral.** (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
>
> . . . .
>
> (b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

§ 4–3–606(1)(b), 2 C.R.S. (1992). Several courts in other jurisdictions interpreting Uniform Commercial Code provisions similar to section 4–3–606 have concluded that this language protects a surety whose risk of payment under the terms of a negotiable instrument has been increased without the surety's consent. *See Ramsey v. First Nat'l Bank & Trust Co.,* 683 S.W.2d 947 (Ky.App.1984) (agreement between creditor and third party relieves surety of obligation against whom there is a known right of recourse made without a surety's consent or by careless handling of the collateral by the creditor). *See also Schmuckie v. Alvey,* 758 S.W.2d 31 (Ky. 1988) (holder's subordination of its lien to the interest of a third party lender constitutes impairment of the collateral and an accommodation maker will be discharged from liability on the note); *Hughes v. Tyler,* 485 So.2d 1026 (Miss.1986) (value of real estate, which served as collateral for a promissory note, was impaired when the holder-secured party released a portion of the collateral property without the consent of the primary party to the note, thus increasing the debt percentage of the loan and decreasing the margin of security); *Beneficial Fin. Co. of Norman v. Marshall,* 551 P.2d 315 (Okla.App.1976) (unjustifiable impairment of collateral by a secured party will be interpreted to include unreasonable acts which make the collateral unavailable to a surety and thus increase his or her risk). This court has recognized that when a principal contract or a contract of suretyship is materially altered without the surety's knowledge or consent, the surety is discharged from liability. *National Union Fire Ins. Co. v. Denver Brick & Pipe Co.,* 162 Colo. 519, 531, 427 P.2d 861, 867 (1967). *See People v. Smith,* 645 P.2d 864, 865 (Colo.App.1982) (a surety takes calculated risks in assuming suretyship role, and events that materially increase that risk without the surety's consent terminate the surety's obligation). It is thus clear that Haberl was relieved of his obligations as a surety for APE's promise to pay the Bigelow note if he did not consent to the subordination of the Bigelow deed of trust.

 Whether a party's consent to an increased risk can be implied from silence depends on the circumstances of the particular case. An increase in the risk assumed by a surety in effect alters the terms of the initial suretyship agreement. Mere silence by a surety in the face of activity by the principal and the creditor is not ordinarily regarded as acquiescence in or consent to any changes in the original arrangements. *Bank of Nova Scotia v. St. Croix Drive–In Theatre, Inc.,* 552 F.Supp. 1244, 1250 (D.V.I.1982); *A/C Elec. Co. v. Aetna Ins. Co.,* 251 Md. 410, 247 A.2d 708, 711 (1968). *Accord Elfinwild Volunteer Fire Dep't v. International Fidelity Ins. Co.,* 530 F.Supp. 111, 113 (W.D.Pa.1982). Such change should not be presumed in the absence of evidence that the surety not only knew of the extent of the additional risk to be assumed but also had no objection to assuming such additional risk.

 The general rule is that mere knowledge of the impairment should not be

deemed to be consent where the party's silence does not clearly indicate his lack of objection to the impairment. William D. Hawkland & Larry Lawrence, *Uniform Commercial Code Series* § 3–606:12 (1984). *See also* 72 C.J.S. Principal and Surety § 103 (1987) (silence alone ordinarily does not indicate surety's consent to any variation or change in the contract or obligation of the principal).

 Many authorities have examined the issue of assent by silence in the context of contract law. The Restatement (Second) of Contracts, section 19, contains the following observations regarding conduct as a manifestation of assent:

> (1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.
>
> (2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.
>
> (3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause.

Restatement (Second) of Contracts § 19(1)–(3) (1979). *See also id.* at § 69 cmt. a. ("Acceptance by silence is exceptional" and "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak"). Typically, silence or inaction will be deemed acceptance of an offer only when the relationship between the parties is such that an offeror is justified in expecting a reply or the offeree is under a duty to respond. *Brooks Towers Corp. v. Hunkin–Conkey Constr. Co.*, 454 F.2d 1203, 1207 (10th Cir.1972); *Western Insulation Servs., Inc. v. Central Nat'l Ins. Co. of Omaha*, 460 N.W.2d 355, 358 (Minn. App.1990). While in some circumstances assent may be implied from a course of conduct between the contracting parties, a person receiving a proposal to change an agreement to which that person is a party is not obliged to answer the proposal. 17A C.J.S. Contracts, § 375 at 427–28 (1963).

 In the instant case, the only evidence presented at trial regarding Haberl's alleged consent to the subordination by the Bigelows of the Bigelow note and deed of trust to the Midland note and deed of trust was his telephone conversation with Philip Hazouri of APE. In that conversation, Hazouri communicated to Haberl that APE was having difficulty securing a subordination agreement from the Bigelows and that such a subordination was crucial to the refinancing arrangement between APE and the Midland Federal Savings and Loan Association. According to Hazouri, Haberl did not say anything or make "any real comment" during this conversation.

This evidence falls far short of establishing that Haberl knowingly consented to the increase in his risk for purposes of section 4–3–606(1)(b) of the Code. Haberl was under no duty to respond to Hazouri's general statements. More importantly, at the time of the critical conversation the terms and conditions of the subordination agreement had not been agreed upon and, consequently, were never communicated to Haberl. His failure to object to an increase in risk that was never explained to him cannot be deemed consent, and the record contains no evidence of a course of conduct by Haberl or any communications between Haberl and APE, Hazouri or the Bigelows to support the conclusion that Haberl had knowledge of the terms of the proposed subordination agreement and consented thereto.

The court of appeals relied on our decision of *Lothrup v. Union Bank*, 16 Colo. 257, 27 P. 696 (1891), in concluding that Haberl's silence indicated his consent to the subordination of the Bigelow deed of trust to the Midland deed of trust. That case is distinguishable. In *Lothrup* the trial court concluded that the defendant authorized the placing of his signature on a promissory note and rejected the defendant's claim that the signature was forged. Although bank officials showed the executed note to Lothrup, he did not indicate that the signature was not his. When the bank mailed

Lothrup a notice concerning the note and its maturity date, Lothrup never responded, and when a bank officer telephoned Lothrup concerning the validity of the promissory note, Lothrup stated affirmatively that the note was "all right."

In affirming the trial court's determination that Lothrup had signed the note, we observed that "[h]e who is silent appears to consent." *Lothrup*, 16 Colo. at 261, 27 P. at 698. However, we emphasized Lothrup's several opportunities to disavow the signature and we also cautioned that the above maxim "undoubtedly has many exceptions and qualifications, and is always to be considered with more or less caution according to the circumstances of the case." *Id.* at 261, 27 P. at 698.

Here, the issue of the proposed subordination was presented to Haberl during the course of one brief telephone conversation during which Hazouri requested Haberl's assistance. Hazouri neither asked Haberl to agree to the subordination nor solicited Haberl's comments concerning the proposal. Furthermore, unlike the defendant in *Lothrup*, Haberl did not subsequently engage in conduct or with affirmative statements that indicated consent to the transaction that increased his risk.

We conclude that the trial court erred in determining that Haberl consented to the subordination of the Bigelow deed of trust to the Midland deed of trust. In our view, Haberl was discharged from his obligations on the Bigelow note pursuant to section 4–3–606(1)(b), 2 C.R.S. (1992), when as a result of the conduct of the Bigelows and APE, Haberl became in effect a surety on the APE note and his risk of repayment was increased. We thus conclude that the court of appeals erred in affirming the trial court's judgment on this issue.

## III

Haberl contends here, as he did at trial, that, pursuant to the provisions of section 4–3–401(1), 2 C.R.S. (1992), he cannot be held liable to the Bigelows on the basis of the Bigelow note because the terms of the underlying security instrument were substantially modified by the November 16, 1984, assumption agreement executed by APE and the Bigelows, but not by Haberl.

Haberl also argues that his oral communication with Hazouri in November of 1984 cannot be deemed an agreement to the impairment of the collateral for purposes of section 4–3–606, Comment 3, 2 C.R.S. (1992), because the Bigelow deed of trust constitutes an interest in land for purposes of the statute of frauds and any agreement affecting that interest must also be in writing. Because we have concluded that Haberl is not liable to the Bigelows on the Bigelow note because his risk of repayment was increased without his consent, we need not address Haberl's alternative arguments.

## IV

For the foregoing reasons, the judgment of the court of appeals is reversed insofar as it affirms the trial court's judgment against Haberl. Because the court of appeals directed the trial court to consider questions pertaining to awards of attorney fees against Haberl and others, we remand the case to the court of appeals with directions to enter a judgment reversing the trial court's judgment against Haberl and remanding the case to the trial court for further proceedings with respect to the attorney fees consistent with this opinion and those portions of the court of appeals opinion not affected by our decision here.

Justice ERICKSON dissents, and Justice MULLARKEY joins in the dissent.

Justice ERICKSON dissenting:

I would affirm the result reached by the trial court and the court of appeals. *See Bigelow v. Nottingham*, 833 P.2d 764 (Colo.App.1991). I specifically dissent from section II of the majority opinion in which the majority concludes that the "evidence falls far short of establishing that Haberl knowingly consented to the [impairment of his collateral] for purposes of section 4–3–606(1)(b) of the Code." Moreover, while the majority does not reach all of the issues on which we granted certiorari, I would also conclude that the statute of frauds is

not applicable under the facts of this case for purposes of discharging the Haberls from liability, pursuant to section 4–3–606(1)(b) of the Code, for the negotiable instrument they made in favor of the Bigelows that is secured by a deed of trust on real property.[1]

In my view, section 4–3–606(1)(b) does not require that parties provide only written consent to the impairment of their collateral. Rather, consent to the impairment of collateral securing negotiable instruments is a factual determination to be made by the trier of fact, in this case the trial court, and may be determined based on a review of the facts and surrounding circumstances including the parties prior course of conduct, as well as any alleged verbal consent, or written consent.

The majority implies that the only factual circumstances evidencing Haberl's consent to the subordination of the Bigelow deed of trust is the telephone conversation between Haberl and Hazouri. However, the record contains substantial evidence indicating a prior course of conduct involving Haberl and the subject property which leads to the inescapable conclusion that Haberl knew that the Bigelow deed of trust not only would be, but must be, subordinated to that of Midland.[2]

The property was transferred on three separate occasions, and each transfer included a rider providing that the Haberls would subordinate their "Third Note & Trust Deed to a *new first* mortgage and the existing second mortgage [i.e. the Bigelow deed of trust] if [the property is subse-

quently] refinanced." Moreover, when Haberl consented to the subordination of his own deed of trust to Midland's new mortgage, the subordination agreement provided that "the parties [including Haberl] hereto desire that [Midland's] Deed of Trust be a *first and prior lien,*" on the property and that the "Midland deed of trust *shall be a first and prior lien.*"

It is in the context of evidence indicating an eight year history of the Haberls agreeing to the subordination of both the Bigelow and Haberl deeds of trust to that of a subsequent first mortgage refinancing that the trial court heard the unrefuted evidence of Haberl's consent by silence. The majority errs in replacing its own factual determinations for those of the trial court. "It is axiomatic that an appellate court cannot substitute itself as a finder of fact, and that the factual findings of the lower court sitting without a jury are not to be disturbed on appeal unless clearly erroneous and not supported by the record." *Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979). The record contains ample support for the *factual determination* that Haberl consented to the subordination of the Bigelow deed of trust. Because the statute of frauds does not require the consent of Haberl to be in writing, I would affirm the judgment of the court of appeals.

I am authorized to say that Justice MULLARKEY joins in this dissent.

---

1. It is undisputed that the deed of trust originally granted by the Haberls to the Bigelows is sufficient to satisfy the statute of frauds. It is also undisputed that the subordination agreement given by the Bigelows to Midland is contained in a writing that is sufficient to satisfy the statute of frauds.

2. I note that pursuant to an agreement between APE and Haberl, the Haberl note was subsequently paid in full. Pursuant to the telephone conversation between Haberl and Hazouri, Haberl learned that APE believed that the Bigelows were *legally obligated* to subordinate their deed of trust and that APE would likely sue the Bigelows if they refused to subordinate. Haberl also learned that the Bigelows' subordination

was crucial to APE's completing the refinancing of the property. Had the Bigelows failed to subordinate their own deed of trust, there was a significant risk of default, including a default on APE's obligation to pay off the Haberl note. Accordingly, it was in Haberl's best interest to ensure the success of APE's attempt to obtain the Bigelow subordination agreement. It is not surprising that Haberl failed to object when he was informed that obtaining the Bigelow subordination agreement was crucial to the success of APE's refinancing efforts. Haberl should not now be heard to complain that his interest in the collateral was substantially impaired when the effect of that impairment was the satisfaction of a note payable to him.