**CROWN LIFE INSURANCE CO.,
a Canadian Corporation,
Plaintiff–Appellee,**

v.

**HAAG LIMITED PARTNERSHIP and
Rex L. Haag, Defendants–
Appellants.**

**No. 95CA1211.**

Colorado Court of Appeals,
Div. II.

Nov. 7, 1996.

Fairfield and Woods, P.C., Rocco A. Dodson, Denver, for Plaintiff–Appellee.

Michael A. Littman, Wheat Ridge, for Defendants–Appellants.

Opinion by Judge CRISWELL.

Defendants, Haag Limited Partnership and Rex. L. Haag (borrowers), appeal from the summary judgment entered in favor of plaintiff, Crown Life Insurance Company (lender). We affirm.

In 1979, borrowers and other parties (the Gashs) executed a promissory note payable to Mellon National Mortgage Company (Mellon). Borrowers were primarily liable on the note when it was executed. As security for payment of the note, borrowers and the Gashs executed a deed of trust on a parcel of property jointly owned by borrowers and the Gashs. Thereafter, Mellon assigned the note and deed of trust to lender.

In 1981, borrowers and the Gashs sold the property, and the Gashs took back a purchase-money deed of trust on the property, which was subordinate to the existing deed of trust. The property was sold again in 1983. However, in 1986, the Gashs foreclosed on the property and again became its owners.

Because income from the property was not sufficient to meet lender's note payments, the Gashs requested modifications in the note and deed of trust. Modifications were made in 1987, 1988, and 1992, and generally allowed interest-only payments for a specified period. However, in 1993, the note went into default, and lender foreclosed. After judicial sale of the property, a deficiency of some $400,000 was still owing.

In 1994, lender instituted an action against both borrowers and the Gashs for this deficiency. The Gashs agreed to a stipulated settlement with lender, and borrowers and lender then filed cross-motions for summary judgment supported by a written stipulation of facts. The district court granted lender's motion, denied borrowers' motion, and entered judgment for lender for the deficiency. It is from that judgment that borrowers appeal.

## I.

Borrowers first contend that, pursuant to § 4–3–606(1)(b), C.R.S. (1982 Repl.Vol. 2), they should be discharged from their obligation because lender impaired the collateral securing the note without their consent. The trial court concluded that, because borrowers consented in advance to the modifications that were made, § 4–3–606(1)(b) did not operate to discharge borrowers. We agree with the trial court.

Because borrowers' note is a negotiable instrument, it is governed by article 3 of the Uniform Commercial Code, §§ 4–3–101, et seq., C.R.S. (1982 Repl.Vol. 2). *Haberl v. Bigelow*, 855 P.2d 1368 (Colo.1993).

Prior to its repeal and re-enactment in 1995 as part of § 4–3–605, C.R.S. (1996 Cum. Supp.), § 4–3–606(1)(b) provided for the discharge of any party to an instrument if the holder unjustifiably impaired any collateral for the instrument without the party's consent. Section 4–3–606 (Official Comment 2), however, stated that "consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward."

Courts in other jurisdictions interpreting similar statutes have concluded that prior consent provisions in an instrument do, in fact, waive either a surety or co-maker's right to claim a discharge of obligations, based upon later modifications to the obligation. *See Krumme v. Moody*, 910 P.2d 993 (Okla.1995); *Southeastern Bank v. Renfro*, 208 Ga.App. 487, 430 S.E.2d 860 (1993); *Federal Land Bank v. Taggart*, 31 Ohio St.3d 8, 508 N.E.2d 152 (1987); *DeKalb County Bank v. Haldi*, 146 Ga.App. 257, 246 S.E.2d 116 (1978).

Borrowers' reliance on *Haberl v. Bigelow, supra*, is misplaced. There, our supreme court considered whether failure to object to a subordination agreement constituted consent, rather than the question, presented here, whether express, advance consent can properly be obtained.

The note executed by borrowers gave express prior consent to "any extension of the time of payment hereof, or of any installment hereof" and waived notice of such an extension. Hence, borrowers expressly consented to the modifications made by lender, and

they waived the right to claim discharge as a result.

## II.

Borrowers next assert that two statutes of frauds, § 38–10–106, C.R.S. (1982 Repl.Vol. 16A) and § 38–10–124, C.R.S. (1996 Cum. Supp.), are applicable to modifications to a promissory note secured by a deed of trust. The trial court disagreed, and so do we.

### A.

 Section 38–10–106 requires that the creation, grant, assignment, surrender, or declaration of an interest in land be in writing. Hence, the question presented is whether a promissory note secured by an incumbrance on realty creates an interest in that realty. We conclude that it does not.

In *Bigelow v. Nottingham,* 833 P.2d 764 (Colo.App.1991), *rev'd on other grounds sub nom. Haberl v. Bigelow, supra,* it was held that, in a "lien theory" state such as Colorado, a deed of trust does not create an "interest" in land for purposes of the statute of frauds.

 However, even if it is assumed that the terms of a deed of trust cannot be amended in any material way without compliance with the statute, the claim here is not grounded upon the deed of trust. The liability at issue here arises under the promissory note. And, a promissory note does not itself create any interest in land, even if such a note is secured by a deed of trust.

Here, the deed of trust was foreclosed without complaint by borrowers, and lender's claim for the deficiency is based upon the liability created by the promissory note. The statute of frauds has no applicability to the promissory note.

### B.

 Borrowers also argue that § 38–10–124, which requires credit agreements to be in writing, invalidates the modifications and renders borrowers free from liability for any obligation created by such modifications. We disagree.

Section 38–10–124, which requires all "credit agreements" or amendments thereto to be in writing, was enacted in an effort to discourage lender liability litigation and to promote certainty in credit transactions. This statute, which is applicable to promissory notes secured by real estate, reflects the intent of the General Assembly to render credit agreements and modifications thereto, entered into on or after July 1, 1989, ineffective unless reduced to writing. *Norwest Bank Lakewood National Ass'n v. GCC Partnership,* 886 P.2d 299 (Colo.App.1994).

Here, borrowers executed a written promissory note that contained an explicit consent to later modifications without notice. All three modifications to that note were reduced to writing and signed by the co-makers. Hence, the existence, content, and meaning both of the original note and of the modifications are certain.

By consenting in the original instrument to future modifications of the note, borrowers agreed, in effect, that the co-makers were agents for the borrowers in executing any future modifications or extensions. At least under these circumstances, in which the original note containing borrowers' consent, as well as the later modifications thereto, were both reduced to writing and signed by the co-makers, we conclude that both the purpose and requirements of § 38–10–124 were met.

## III.

 Borrowers also contend that § 4–3–118(f), C.R.S. (1982 Repl.Vol. 2) applies to their obligation under the note. However, because this issue was not presented for consideration by the trial court and was raised for the first time on appeal, we decline to address it. *Mohawk Green Apartments v. Kramer,* 709 P.2d 955 (Colo.App.1985).

## IV.

 Finally, borrowers argue that lender should be equitably estopped from enforcing borrowers' liability for any deficiency, because lender breached an implied covenant of good faith and fair dealing by not notifying borrowers of or obtaining borrowers' consent to the modifications. We are not persuaded.

**46**

Every contract contains an implied duty of good faith and fair dealing, the purpose of which is to effectuate the reasonable expectations of the parties. *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo.1995). However, this duty requires only that the parties to a contract perform the obligations imposed by the agreement in good faith and in a reasonable manner. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359 (Colo.App.1994).

Here, borrowers have presented no evidence which suggests that lender conducted itself unreasonably or in bad faith. On the contrary, because the promissory note signed by borrowers contained a prior consent clause, borrowers should have reasonably expected that lender might agree with the co-makers to modify or to extend the note. Hence, there is no basis for the assertion that lender breached the duty of good faith and fair dealing.

Likewise, we reject borrower's equitable estoppel claim.

The doctrine of equitable estoppel applies to misstatements or other misrepresentations of fact. *Board of County Commissioners v. DeLozier*, 917 P.2d 714 (Colo. 1996). To establish a claim for equitable estoppel, there must be a clear showing of each of four elements:

> [T]he party against whom the estoppel is asserted must know the facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct.

*Jefferson County School District No. R–1 v. Shorey*, 826 P.2d 830, 841 (Colo.1992).

Here, borrowers do not assert that lenders made any misrepresentations or omissions of fact. Further, borrowers could not have been ignorant of the true facts with respect to the lender's right to make loan extensions or modifications because they specifically consented to such extensions or modifications in the promissory note. Thus, there is no basis for an equitable estoppel claim.

Judgment affirmed.

STERNBERG, C.J., and BRIGGS, J., concur.