**FIRST ATLANTIC MORTGAGE, LLC, a Georgia limited liability company, Plaintiff–Appellant,**

v.

**SUNSTONE NORTH HOMEOWNERS ASSOCIATION, a Colorado nonprofit corporation, Defendant–Appellee.**

No. 03CA2356.

Colorado Court of Appeals, Div. II.

Feb. 24, 2005.

Bennington Johnson Biermann & Craigmile, LLC, Deanna Lee Westfall, Kathleen E. Craigmile, Tami L. Sapp, Denver, Colorado, for Plaintiff–Appellant.

Richard W. Johnston, P.C., Richard W. Johnston, Englewood, Colorado, for Defendant–Appellee.

RUSSEL, J.

Plaintiff, First Atlantic Mortgage, LLC, appeals from the trial court's judgment denying relief pursuant to C.R.C.P. 105.1. We affirm.

I. Background

In June 2002, a buyer purchased a house that is subject to the covenants and assessments of defendant, Sunstone North Homeowners Association. The buyer gave First Atlantic a deed of trust on the property. In November 2002, First Atlantic began foreclosure proceedings.

In December 2002, Sunstone recorded a notice of lien against the house in the amount of $1,455.90. This amount included delinquent homeowner assessments and various other charges.

In February 2003, First Atlantic acquired the house at a public auction. After the redemption period expired, First Atlantic acquired title from the public trustee. Shortly thereafter, Sunstone filed a second notice of lien in the amount of $804.

First Atlantic brought suit under C.R.C.P. 105.1, asking the court to invalidate Sun-

stone's lien. The dispute centered on the meaning of § 38–33.3–316(2)(b)(I), C.R.S. 2004, which gives special priority to statutory liens held by homeowners associations in an "amount equal to the common expense assessments ... which would have become due, in the absence of any acceleration, during the six months immediately preceding [the filing of legal action]."

The parties agreed that Sunstone's statutory lien had priority over First Atlantic's interest. But they disagreed about the amount of this "super priority" lien:

First Atlantic's position—A super priority lien may comprise only delinquent common expense assessments. Because the buyer owed Sunstone only $687.87 in common expense assessments at the time of foreclosure, Sunstone's super priority lien is limited to $687.87.

Sunstone's position—In addition to common expense assessments, a super priority lien may comprise late charges, attorney fees, fines, and interest. The buyer owes $1,455 overall. Thus, the super priority lien is limited only by the statutory cap— an amount equal to six months of assessments—which, in this case, is $804.

The trial court agreed with Sunstone and denied First Atlantic's request for relief under C.R.C.P. 105.1.

## II. Discussion

In resolving an issue of statutory interpretation, the first step is to look to the plain language of the statute. People v. Dist. Court, 713 P.2d 918, 921 (Colo.1986). We construe the statute as a whole to give consistent, harmonious, and sensible effect to all its parts. Davison v. Indus. Claim Appeals Office, 84 P.3d 1023 (Colo.2004).

Section 38–33.3–316, C.R.S.2004, states, in pertinent part:

(1) The association ... has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. Unless the declaration otherwise provides, fees, charges, late charges, attorney fees, fines, and interest ... are enforceable as assessments under this article. The amount of the lien shall include all those items set forth in this section from the time such items become due. If an assessment is payable in installments, each installment is a lien from the time it becomes due, including the due date set by any valid association's acceleration of installment obligations.

(2)(a) A lien under this section is prior to all other liens and encumbrances on a unit except:

...

(II) A security interest on the unit which has priority over all other security interests on the unit and which was recorded before the date on which the assessment sought to be enforced became delinquent ...

(b) Subject to paragraph (d) of this subsection (2), a lien under this section is also prior to the security interests described in subparagraph (II) of paragraph (a) of this subsection (2) to the extent of:

(I) An amount equal to the common expense assessments based on a periodic budget adopted by the association under section 38–33.3–315(1) which would have become due, in the absence of any acceleration, during the six months immediately preceding institution by either the association or any party holding a lien senior to any part of the association lien created under this section of an action or a nonjudicial foreclosure either to enforce or to extinguish the lien.

(Emphasis added.)

We conclude that the plain language of the statute supports Sunstone's position. Within the meaning of subsection (2)(b), a "lien under this section" may include any of the expenses listed in subsection (1), including "fees, charges, late charges, attorney fees, fines, and interest." Thus, although the maximum amount of a super priority lien is defined solely by reference to monthly assessments, the lien itself may comprise debts other than delinquent monthly assessments.

We note that our view matches that of a commentator who has examined the uniform act on which § 38–33.3–316 was based. This commentator has concluded that, under the uniform act, the super priority lien may com-

prise debts other than delinquent assessments:

A careful reading of the ... language reveals that the association's Prioritized Lien, like its Less–Prioritized Lien, may consist not merely of defaulted assessments, but also of fines and, where the statute so specifies, enforcement and attorney fees. The reference in section 3–116(b) to priority "to the extent of" assessments which would have been due "during the six months immediately preceding an action to enforce the lien" merely limits the maximum amount of all fees or charges for common facilities use or for association services, late charges and fines, and interest which can come with the Prioritized Lien.

James Winokur, *Meaner Lienor Community Associations: The "Super Priority" Lien and Related Reforms Under the Uniform Common Ownership Act,* 27 Wake Forest L.Rev. 353, 367 (1992) (footnotes omitted).

The parties do not dispute that the common expense assessments that would have become due in the six months prior to foreclosure total $804. Nor do they dispute that, when First Atlantic commenced foreclosure proceedings, the buyer owed Sunstone more than $804 in fees, charges, late charges, attorney fees, fines, and interest. Therefore, the trial court was correct in holding that Sunstone's lien has priority over First Atlantic's property interest in the amount of $804.

The parties disagree whether the prioritized portion of a lien may continue to increase after the commencement of foreclosure proceedings. We decline to address this issue because the answer would not affect the outcome of this case.

The judgment is affirmed.

Judge TAUBMAN and Judge CRISWELL concur.