BA MORTGAGE, LLC, Plaintiff–
Appellant and Cross–
Appellee,

v.

QUAIL CREEK CONDOMINIUM
ASSOCIATION, INC., Defendant–
Appellee and Cross–Appellant.

No. 06CA0246.

Colorado Court of Appeals,
Div. III.

Jan. 24, 2008.

Rehearing Denied March 13, 2008.

Certiorari Denied Sept. 15, 2008.

Holland & Hart, LLP, Christie Ryan, Christina Gomez, Colorado Springs, Colora-

do, for Plaintiff–Appellant and Cross–Appellee.

Alpern, Myers, Stuart, Scheuerman & Hickey, LLC, Jack J. Scheuerman, Colorado Springs, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROY.

Plaintiff, BA Mortgage, LLC (the lender), appeals from a judgment dismissing its claims of slander of title, spurious lien, and tortious interference with contract against defendant, Quail Creek Condominium Association, Inc. (the association). The association cross-appeals the trial court's conclusion that a subordination agreement, which elevated the lender to holder of the first deed of trust, was valid and the denial of an award of attorney fees. We affirm in part, vacate in part, and remand for further proceedings on attorney fees.

The association is a condominium association that recorded its declaration May 29, 1979. On July 31, 1997, certain individuals (the owners) purchased a unit and encumbered it with a purchase money first deed of trust. On March 16, 1998, the owners encumbered the property with a second deed of trust. On January 22, 1999, the owners encumbered the unit with a third deed of trust, the proceeds of which were used to pay off the debt secured by the first deed of trust, and to which the second deed of trust was immediately subordinated by a subordination agreement signed by the beneficiary. However, the subordination agreement, though prepared for their signatures, was never signed by the owners. The lender, subject to the validity of the subordination agreement which is in dispute here, is the successor beneficiary of the resulting first deed of trust.

The association filed two assessment liens, the first on May 22, 2001 for $944, for dues, utilities, and late fees incurred through March 30, 2001; and the other for $659, for similar fees from April 1 to May 21, 2001. On or about June 15, 2001, the lender initiated a foreclosure of its deed of trust and was issued a certificate of purchase by the public trustee. Subsequently, the lender conveyed the unit to the Department of Housing and Urban Development (HUD).

On April 15, 2002, the public trustee issued its deed to HUD. On April 25, 2002, the association recorded a restatement of its liens representing that "the Association's lien is still an encumbrance against the property in question and is a first lien."

During the spring of 2002, the lender, through counsel, twice tendered to the association $1,005.54, representing six months of assessments accruing prior to the date of foreclosure. The association rejected the tender, asserting the invalidity of the subordination agreement.

Because it concluded that title to the unit was not marketable, HUD conveyed the unit back to the lender on June 26, 2003. Finally, on November 13, 2003, the property was sold to a third party.

The lender commenced these proceedings, asserting damages and alleging claims for slander of title, quiet title, spurious lien, and tortious interference with contract. The association filed a counterclaim for the payment of its assessments and attorney fees.

Both parties filed motions for summary judgment. The trial court concluded that (1) the subordination agreement was valid; (2) the lender was the holder of the first deed of trust as of March 30, 1999; (3) the association's lien for unpaid budgeted assessments due within six months prior to the commencement of the foreclosure in the amount of $1,005.54 was superior to that of the lender pursuant to section 38–33.3–316(2)(b)(I), C.R.S.2007; (4) the association was entitled to judgment against the lender in the amount of $5,274.70 for those budgeted assessments coming due following the issuance of the certificate of purchase until the unit was sold to a third party; (5) because there was insufficient evidence of the requisite mens rea, the lender's claims of slander of title, spurious lien, and tortious interference with contract should be dismissed; (6) neither party was entitled to attorney fees; and (7) the lender was entitled to its costs incurred from July 10, 2002, through the date of the judgment.

This appeal followed.

## I. Standard of Review

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). "The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party." *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1009 (Colo.1992) (quoting *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988)). The fact that a court is presented with cross-motions for summary judgment does not decrease the responding party's burden of going forward. *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo.1998). We review a grant of summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Court*, 954 P.2d 608, 611 (Colo. 1998).

The interpretation of statutes is a question of law also subject to de novo review. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

## II. Lien Priorities

The lender asserts that its deed of trust is senior to the association's lien for assessments based on the May 29, 1979, declaration. We first conclude that the priority of the encumbrances at issue here is to be determined pursuant to section 38–33.3–316, C.R.S.2007, not the declaration. Based on that conclusion, we agree that the lender's deed of trust is senior to the association's assessment lien except for those assessments accruing within six months prior to the commencement of the lender's foreclosure proceedings.

The declaration provides that the association's lien for unpaid common expenses chargeable to a unit is senior to all other liens and encumbrances *except* "all sums unpaid on the first mortgage or first deed of trust of record, including advances and all unpaid obligatory sums as may be provided by such encumbrances." Therefore, under the declaration, if the lender's deed of trust is the first deed of trust, it is superior to the association's assessment lien.

The Colorado Common Interest Ownership Act (the Act) was originally adopted in 1991, effective July 1, 1992. Ch. 283, sec. 1, §§ 38–33.3–101 to –319, 1991 Colo. Sess. Laws 1701–57. It was adopted, among other reasons, to provide stability to the finances of common interest communities by granting them a super-lien for unpaid assessments, and to provide uniformity and predictability to lenders in order to promote the availability of financing. § 38–33.3–102, C.R.S.2007.

If a statute is clear and unambiguous on its face, we need not look beyond the plain language and must apply the statute as written. *Garhart ex rel. Tinsman v. Columbia/HealthONE, L.L.C.*, 95 P.3d 571, 591 (Colo.2004). The Act is such a statute.

The Act provides that some of its sections apply to common interest communities created prior to July 1, 1992, as to circumstances arising after that date. § 38–33.3–117, C.R.S. 2007. Among those sections is section 38–33.3–316, which establishes the lien rights and priorities of the association. § 38–33.3–117(1)(k), C.R.S.2007.

The Act defines "security interest" as an "interest in real estate or personal property created by contract or conveyance which secures payment or performance of an obligation," including "a lien created by a mortgage, deed of trust ... and any other consensual lien ... intended as security for an obligation." § 38–33.3–103(28), C.R.S. 2007. With respect to the perfection of an association assessment lien, the Act provides: "Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessments is required." § 38–33.3–316(4), C.R.S.2007. Section 38–33.3–316(2), in pertinent part, provides:

(a) A lien under this section is prior to all other liens and encumbrances on a unit except:

. . .

(II) A *security interest on the unit which has priority over all other security interests on the unit* and which was recorded before the date on which the assessment

sought to be enforced became delinquent ... and

(III) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

(b) Subject to paragraph (d) of this subsection (2) a lien under this section is also prior to the security interests described in subparagraph (II) of paragraph (a) of this subsection (2) to the extent of:

(I) *An amount equal to the common expense assessments based on a periodic budget adopted by the association under section 38-33.3-315(1) which would have become due, in the absence of any acceleration, during the six months immediately preceding institution by either the association or any party holding a lien senior to any part of the association lien created under this section of an action or a nonjudicial foreclosure either to enforce or to extinguish the lien.*

(c) This subsection (2) does not affect the priority of mechanics' or materialmen's liens or the priority of liens for other assessments made by the association. A lien under this section is not subject to the provisions of part 2 of article 41 of this title [homestead exemption] or to the provisions of section 15-11-201, C.R.S. [surviving spouse's elective share].

(d) The association shall have the statutory lien described in subsection (1) of this section for any assessment levied or fine imposed after June 30, 1992. Such lien shall have the priority described in this subsection (2) if the other lien or encumbrance is created after June 30, 1992.

(Emphasis added.)

The Act is patterned on the Uniform Common Interest Ownership Act promulgated by the National Conference of Commissioners on Uniform State Laws. Unif. Common Interest Ownership Act §§ 1-101 to 5-110, 7 U.L.A. 1-167 (1982). The Uniform Act was again promulgated in 1994 with substantial amendments. Unif. Common Interest Ownership Act §§ 1-101 to 5-110, 7 U.L.A. 835-1009 (1994).

Colorado's version departs substantially from the 1982 Uniform Act. The pertinent departure occurs in section 38-33.3-316(2)(a)(II), which exempts from the first priority of the association's assessment lien a "security interest on the unit which has priority over all other security interests on the unit." The 1982 Uniform Act states, in lieu of the language quoted immediately above: "a first security interest recorded on the unit." Unif. Common Ownership Interest Act § 3-116(b)(ii), 7 U.L.A. 119 (1982). While there is a distinction between the language used in the Act and that in the 1982 Uniform Act, it is, in our view, a distinction without a difference as the definition of "security interest" is limited to consensual encumbrances. § 38-33.3-103(28).

The association then has a super-priority lien over the lender's otherwise senior deed of trust in the event of a foreclosure commenced by the association or the lender, which lien is limited to delinquent assessments accruing within six months of the initiation of foreclosure proceedings. § 38-33.3-316(2)(b)(I). Further, the association's super-priority lien includes interest, charges, late charges, fines, and attorney fees so long as the total does not exceed the limit. § 38-33.3-316(1), C.R.S.2007; *First Atl. Mortgage, LLC v. Sunstone N. Homeowners Ass'n,* 121 P.3d 254, 255 (Colo.App.2005).

Therefore, we conclude that the trial court did not err in concluding that upon foreclosure by the lender, the association's lien for unpaid assessments was senior to that of the lender's first deed of trust to the extent of six months of assessments.

### III. Subordination Agreement

In its cross-appeal, the association asserts that its lien for assessments was superior to the lender's first deed of trust because the subordination agreement was invalid for failure of the unit owners to sign it. We disagree.

As pertinent here, the owners encumbered the unit with a deed of trust dated March 16, 1998, and recorded April 10, 1998. Subsequently the owners encumbered the unit with a deed of trust dated January 22, 1999, and recorded March 30, 1999. The

lender is the assignee of this second deed of trust.

A subordination agreement dated January 22, 1999, was executed by the beneficiary of the then first deed of trust and was recorded March 30, 1999. By that agreement, the then first deed of trust was subordinated to the lender's deed of trust.

As our supreme court has stated:

> "Subordination" is a real estate concept defined as "[t]he act or process by which a person's rights or claims are ranked below those of others." *Black's Law Dictionary* 1426 (7th ed.1999). It is most often used in the context of one lien or mortgage holder agreeing to subordinate its senior interest to the rights of a junior lien or mortgage holder. Subordination . . . is essentially a matter of status between parties.

*Mount Emmons Mining Co. v. Town of Crested Butte*, 40 P.3d 1255, 1258 (Colo.2002) (subordination agreement concerning water rights between the holders of the water rights). The association relies on *Bigelow v. Nottingham*, 833 P.2d 764, 769–70 (Colo.App. 1991), *rev'd on other grounds sub. nom. Haberl v. Bigelow*, 855 P.2d 1368 (Colo.1993), for the proposition that the subordination agreement is invalid because the owners did not sign it. We conclude that the case does not stand for that proposition.

The *Bigelow* case dealt principally with former C.R.S. section 4–3–606, repealed and reenacted with substantial amendments and appearing now as section 4–3–605, C.R.S. 2007. Ch. 159, sec. 1, § 4–3–605, 1994 Colo. Sess. Laws 878. At the time, former § 4–3–606(1)(b), in pertinent part, provided:

> (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
>
> . . .
>
> (b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

The facts of the *Bigelow* case are somewhat extended and convoluted. To make a long story short, the prior owners of the property executed a promissory note in favor of their seller, secured by a second deed of trust. Through a series of subsequent transactions, the deed of trust securing the promissory note became the first deed of trust and was then subordinated to a new deed of trust. The holder of the resulting first deed of trust then foreclosed and there was a deficiency on the subordinated deed of trust securing the prior owner's promissory note. The beneficiary of the prior owners' deed of trust brought a deficiency action. The prior owners asserted a discharge based on the former section 4–3–605(1)(b). The supreme court held that the owners' obligation was discharged after concluding they had not consented to the subordination. *Haberl v. Bigelow*, 855 P.2d at 1375. The prior owners' argument as to the validity of the subordination agreement without their consent was not an issue in the supreme court and was rather perfunctorily rejected by a division of this court. *See Bigelow v. Nottingham*, 833 P.2d at 770.

Here, the owners were obligated for the debt secured by both deeds of trust, and presumably no impairment of collateral as to them has occurred. To the extent there may be an impairment of the owners' collateral, the association has no standing to assert it.

It is undisputed that the only party whose interest was affected by the subordination agreement signed it. In our view, that is sufficient under the circumstances presented. The knowledge of or lack of knowledge of, or the consent to or lack of consent to, the subordination agreement by the owners does not invalidate the subordination agreement.

### IV. Post–Foreclosure Assessments

The lender asserts that the trial court abused its discretion in awarding the association all assessments on the unit from April 15, 2002 to November 13, 2003, the period of the lender's and HUD's ownership in equity. We agree in part.

The trial court, in its order, stated:

> The Court also finds that, in equity, [the association] is entitled to receive compensation for budgeted assessments against the Property pursuant to its periodic budget and also for assessments

against the Property for water, gas and electricity, from the date of the conveyance of the Property to [the lender], April 15, 2002, until the Property was subsequently conveyed to a third party, November 13, 2003; however, [the association] is not awarded late fees or interest on its such assessments because the Court finds that such fees and interest were caused by delay of the bureaucracy of HUD and [the association].

At the outset, HUD, which owned the unit from April 15, 2002, until June 26, 2003, is not a party to these proceedings. Therefore, because the owner of the unit is liable for the assessments, an award of assessments against the lender during that period is not sustainable.

The association, by counterclaim, sought judgment against the lender for assessments attributable to its and HUD's ownership based on the declarations. The declarations, in pertinent part, provide: "All owners ... shall be obligated to pay the estimated common expense assessments ... imposed by the Board of Managers of the Association to meet the common expenses and reserves." This language is mirrored in section 38–33.3–315(6), C.R.S.2007, which is not a section of the Act applicable to the association. § 38–33.3–117. It is undisputed that, except for the period the unit was owned by HUD, the lender was the owner of the unit during the period in question by virtue of the foreclosure.

The association has a lien on the unit for unpaid assessments. § 38–33.3–316(1). The lien is extinguished unless an action to enforce the lien is instituted within six years after the full amount of the assessments becomes due. § 38–33.3–316(5), C.R.S.2007. Moreover, the Act does not prohibit actions to collect sums which are secured by the statutory lien and further provides that an association can recover costs and reasonable attorney fees in such proceedings. § 38–33.3–316(6)–(7), C.R.S.2007.

Therefore, the association could, and did, sue the lender for the assessments arising during the period of the lender's ownership, together with costs and attorney fees. The judgment is affirmed as to the assessments and common expenses arising during the period of the lender's, but not HUD's, ownership of the unit.

## V. Summary Judgment on the Lender's Remaining Claims

The lender asserts that summary judgment was inappropriate as to its spurious lien, slander of title, and tortious interference claims because there were genuine issues of material fact as to each claim. *See* C.R.C.P. 56. These claims were premised on the allegation that the association recorded its assessment liens for the purpose of clouding the lender's title so as to prevent the lender from conveying good, marketable title to HUD, which, in turn, caused HUD to reconvey the property to the lender, causing it damages. We disagree with the lender's assertion.

The association recorded an assessment lien dated May 21, 2001, on May 22, 2001, in the amount of $944.14, covering a period ending March 30, 2001. Contemporaneously, the association recorded an assessment lien dated May 21, 2001 in the amount of $658.51, covering the period April 1, 2001 through May 21, 2001. Subsequently, on April 25, 2002, the association recorded a "Restatement of Assessment Lien" dated April 25, 2002, asserting that its lien was superior to that of the lender and that the subordination agreement was invalid.

The declaration specifically requires the association to prepare and record a notice of lien assessment setting forth the unpaid assessments. The Act does not prohibit the recording of assessment liens; instead, it provides that the recording of the declaration "constitutes record notice and perfection of the lien," and that no further recordation is required. § 38–33.3–316(4). It is undisputed that assessments were in arrears.

Therefore, as a matter of law, the recording of the assessment liens, though unnecessary under the Act to protect the association: (1) cannot constitute a spurious lien because the lien is created by both the declaration and the Act; (2) cannot form the basis for an action for slander of title because the lender's title was already encumbered under the

statute by virtue of the recording of the declaration; and (3) cannot constitute interference with contract because both the lender and HUD were, at all times, on notice of the association's lien rights and the fact that the assessments were in arrears.

The core of the lender's argument, however, is that the association was unreasonable in not acknowledging that the lender's lien was superior. It is apparent from the proceedings that there are, or were, legitimate disagreements between the parties on the source, scope, and priority of their respective interests in the unit. The association argued that its lien covered all of the outstanding assessments, which was correct. However, the same is not true for the super-priority lien which came into effect upon the commencement of the lender's foreclosure proceeding and was limited to six months of assessments. Both parties apparently believed they were dealing with the priority of liens under the declaration, and, in our view, neither was correct in that regard.

Therefore, we affirm the dismissal of the lender's tort claims.

### VI. Attorney Fees

The association asserts that the trial court erred in not awarding it attorney fees based on its declaration and section 38–33.3–302(1)(k), C.R.S.2007. We agree.

We review a trial court's decision regarding an award of attorney fees under an abuse of discretion standard. *Tait v. Hartford Underwriters Ins. Co.,* 49 P.3d 337, 343 (Colo.App.2001).

The association requested attorney fees pursuant to the declaration. The declaration provides, "An Owner shall be required to pay the costs, expenses and attorney's fees incurred by the Association in regard to any such default." In addition, section 38–33.3–316(7) states that an association "*shall* be entitled to costs and reasonable attorney fees" for the collection of the assessments due under section 38–33.3–316. (Emphasis added.)

Here, the court rejected the association's request for attorney fees on the basis that neither party had acted in bad faith. However, in light of both the statutory and declaration mandates, the association is entitled to reasonable attorney fees. Therefore, we conclude that the trial court erred in failing to make such an award. We vacate the trial court's order with respect to attorney fees and remand for a determination and award to the association of its reasonable attorney fees in light of the total circumstances of this case. The association has requested attorney fees and costs on appeal and, for the same reason, the matter is remanded for a determination of those reasonable attorney fees and costs.

Therefore, the summary judgment is affirmed, except that it is vacated as to the award of assessments during the period that HUD owned the unit; the order as to attorney fees is vacated; and the case is remanded to the trial court for a determination of reasonable attorney fees incurred in the trial court and on appeal.

Judge FURMAN and Judge BERNARD concur.